[No. 18488.   Department Two.   June 3, 1924.]

THE STATE OF WASHINGTON, *on the Relation of John F. Jordan, Plaintiff*, v. DEPARTMENT OF LICENSES, *Fred J. Dibble, Director, Respondent.*[1]

PHYSICIANS AND SURGEONS (2)—REGULATION—DENTISTS—QUALIFICATIONS—POWERS OF BOARD—STATUTES—VALIDITY. It being within the constitutional power of the legislature to prescribe the qualifications of dental practitioners and to vest in an administrative board or person exclusive authority to pass upon the same, the dentistry act, Rem. 1923 Sup., § 10030-1 *et seq.*, is not unconstitutional in that it requires an examining board to report the result of its examination to the director of licenses who may determine therefrom whether an applicant is qualified, so long as he does not act dishonestly, arbitrarily or without due consideration.

SAME (4)—DENTISTS—QUALIFICATIONS—EVIDENCE—SUFFICIENCY. Under Rem. 1923 Sup., § 10030-8, requiring an applicant for a dental license to pass certain examinations with a grade of 70%, an applicant cannot claim to have duly passed where the examiners reported to the director of licenses a grade of less than 70%.

Application filed in the supreme court January 14, 1924, for a writ of mandamus to compel the department of licenses to issue to relator a license to practice dentistry.   Denied.

*John M. Gleason* and *Crandell & Crandell,* for relator.

*The Attorney General* and *R. G. Sharpe, Assistant,* for respondent.

FULLERTON, J.—The relator, John F. Jordan, applied to the state director of licenses for a license to practice dentistry under the act of 1923, regulating the practice of dentistry.   (Laws of 1923, ch. 16, p. 24) [Rem. 1923 Sup., § 10030-1].   He failed to satisfy the director that he possessed the qualifications to practice dentistry prescribed by the act, and a license was refused him.   By this proceeding he seeks a writ of mandamus

[1]Reported in 226 Pac. 275.

from this court commanding the director of licenses to issue to him such a license. In support of his application for the writ, the relator makes two principal contentions: (1) that the provisions of the act prescribing the manner of ascertaining the qualifications to practice dentistry of one in his situation are unconstitutional and void, and that, in consequence, when he "filed his petition and took the examination on operative and prosthetic dentistry, he was then entitled, as matter of law, to a license to practice in the state of Washington," and this whether or not he satisfied the director of licenses that he possessed the necessary qualifications; and (2) that he did in fact pass the examination.

To an understanding of the first of the contentions it is necessary to notice certain of the provisions of the act. As we pointed out in *State ex rel. Medcraf v. Department of Licenses,* 127 Wash. 469, 221 Pac. 613, the act in question recognizes three classes of persons entitled to licenses under its provisions; first, those theretofore having licenses to practice dentistry under the then existing laws of the state; second, those who desired to engage in the practice of dentistry for the first time; and third, those who had for seven years theretofore practiced dentistry in the state without a license. As to applications by those practicing dentistry under licenses granted pursuant to former laws, a special provision was made, which need not be further noticed. As to the second class, an examination was required, "divided as follows":

"1. An examination in writing by the examining committee in the following dental subjects as taught in reputable dental colleges, to wit: Anatomy, chemistry, physiology, histology, materia medica, therapeutics, metallurgy, pathology, bacteriology, operative dentistry, prosthetic dentistry, crown and bridge work,

orthodontia, oral surgery and hygiene. Examinations in each subject shall consist of ten questions, answers to which shall be marked upon a scale of zero to ten.

"2. A practical or clinical examination in operative dentistry.

"3. A practical or clinical examination in prosthetic dentistry." Rem. 1923 Sup., § 10030-7, subd. 2.

As to the third class, the following provision was made:

"Applicants who do not possess a high school or dental college education but who shall have practised dentistry in the state of Washington for not less than seven years prior to the date when this act shall take effect, shall not be required to take the oral or written examination provided for in this section but shall undergo a practical or clinical examination in operative and prosthetic dentistry." Rem. 1923 Sup., § 10030-7, subd. 3.

By § 8 (Laws of 1923, p. 28) [Rem. 1923 Sup. § 10030-8] of the act, all applicants for licenses of whom an examination is required must make a grade of not less than 70 per cent in at least two of the subjects, and not less than 60 per cent in the other.

The relator applied for a license as of the third class of applicants. After filing his application, the director of licenses caused him to be examined before an examining committee in the subjects of operative and prosthetic dentistry. In the first of these the committee gave him a grade of 65 per cent, and in the second a grade of 67 per cent. It was the opinion of the director of licenses that these grades were not sufficient to entitle the relator to a license to practice dentistry, and for that reason refused to issue to him such a license.

The act in question does not require any special form of examination under subdivisions 2 and 3 of the section of the statute above quoted, and does not seem

to require that the examining committee shall make any further return to the director of licenses than to report the result of their examination. It is for these reasons, if we have correctly caught the drift of the relator's arguments, that he contends that the requirements are void. He argues that this is "to vest an arbitrary power in the committee and director of licenses; that there is not a single thing that he [the applicant] is required to do that is specific; there is no way of knowing what his qualifications are, or preserve his markings or allowing any one else to inspect the work of the examining board. In other words, the examining board uses arbitrary, final conclusive power to say to any 'practitioner': 'You shall not pass.' "

But we are not able to concede that the objections here made render the act, or any part of it, void. The practice of dentistry is not an avocation which is, under all circumstances and conditions, innocuous. On the contrary, while it is, when confined to competent and skillful hands, one of the most beneficial of all practices, it is, in the hands of the ignorant and unskillful, a practice fraught with grave peril. It is an avocation that affects the comfort, health and life of the individual, and as such has always been a subject for legislative regulation. We do not need to go beyond our own cases for authority in support of this general power. *State ex rel. Smith v. Board of Dental Examiners,* 31 Wash. 492, 72 Pac. 110; *In re Thompson,* 36 Wash. 377, 78 Pac. 899, 2 Ann. Cas. 149; *State v. Sexton,* 37 Wash. 110, 79 Pac. 634; *State ex rel. Brown v. Board of Dental Examiners,* 38 Wash. 325, 80 Pac. 544; *State ex rel. Thompson v. State Board of Dental Examiners,* 48 Wash. 291, 93 Pac. 515; *Brown v. State,* 59 Wash. 195, 109 Pac. 802; *Noble v. Dibble,* 119 Wash. 509, 205 Pac. 1049.

It is the rule, also, that the legislature may not only prescribe that persons desiring to practice dentistry shall have certain qualifications, but may vest in an administrative board or in some individual officer the exclusive power to determine whether an applicant desiring to so practice possesses the required qualifications. *State ex rel. Brown v. Board of Dental Examiners,* 38 Wash. 325, 80 Pac. 544; *Douglas v. Noble,* 261 U. S. 165.

In the first of the cited cases, this language was used:

"On the main proposition in the case—the right of the court to interfere with the discretion of the examining board—quite an array of authority is cited, and the usual discussion in such cases is indulged in. But it seems to us that the confusion that arises in the discussion of this question arises more from the inaccurate terms which are used by the law writers than from any inherent difficulty in the law itself. The general rule is well established that the courts cannot review the discretion which has by law been vested exclusively in inferior tribunals, and mandamus will therefore not lie to compel the performance of acts or duties which necessarily call for the exercise of discretion on the part of the officer or board at whose hands their performance is required; because the state has, as in this instance, determined upon and specified the officers upon whose judgment on the questions submitted to them the state is willing to rely. Taking the case at bar for an example, if a record of the examination had been produced in court, with the questions, answers, and credits given to each question, who would determine whether or not a particular answer had received a sufficient credit? Certainly not the jury, for they are not presumably competent to pass a proper judgment on such subjects. Not the judge, for his qualifications do not embrace, or at least require, an expert knowledge of the science of dentistry. Expert witnesses could not be properly permitted to testify,

for the reason that the state has already designated and empowered experts to pass upon these questions, presumably by reason of their recognized qualifications."

It being therefore within the constitutional power of the legislature to prescribe the qualifications of dental practitioners, and within its powers to vest in an administrative board or person the exclusive authority to determine who possess the requisite qualifications, we cannot conclude that the present act is so far unreasonable as to violate any constitutional right of the relator.

It is not here intended to be asserted that the action of the director of licenses is in all instances entirely beyond the jurisdiction of the courts. The courts will, of course, compel by mandamus an honest performance of official duty. But this question is not involved in the present proceeding. There is no charge that the director acted dishonestly, arbitrarily, or without a due consideration of the relator's qualifications. It appears that he but applied to him the test exacted of all applicants in his situation, and, finding that he did not meet the test, refused to issue a license to him.

The second contention of the relator is also, we think, without foundation. The requirements of the act are that an applicant shall make a grade of 70 per cent in at least two of the subjects in which it is required that he be examined. Since the act does not require an applicant to be examined in the first of the named subjects, the most that such an applicant can claim is that he is entitled to a passing grade in that subject. Granting this to the relator, he is still without the required percentages, as he did not reach a 70 per cent grade in either of the other two subjects on which he was examined.

It follows from the foregoing considerations that the relator is not entitled to the writ which he seeks, and his application must be denied. It is so ordered.

MAIN, C. J., BRIDGES, and MITCHELL, JJ., concur.