## Commonwealth ex rel. v. Griffen et al.

(Decided May 28, 1937.)

O. B. BERTRAM for appellants.

C. C. BAGBY for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

In February, 1936, suit was filed in the Casey circuit court which challenged the right of Thomas Griffen, Marion Garrett, Johnnie Smith, French Toms, and John P. Edwards to continue to hold offices as members of the Casey county board of education. The Attorney General later joined in the suit.

Of the membership as then constituted, Griffen, Garrett, and Smith had been elected in November, 1933, to fill a term of four years. Edwards and Toms were elected November, 1935, for three-year terms. In the petition it is alleged that each and all of defendants in office are "claiming the right to receive and have been receiving the emoluments thereof, without right or authority so to do."

832

The grounds on which it sought to oust the members from office may be thus stated: When Griffen, Garrett, and Smith were elected in 1933, chapter 77 of the Acts of 1932 provided that in addition to age and residence qualifications the candidate must have completed the eighth grade of the common school. When Toms and Edwards were elected in 1935, this chapter had been repealed and re-enacted so that, still requiring the same educational qualification, it provided that the person elected must be able to show such qualification (a) by the records of the school in which said eighth grade was completed; or (b) by affidavits of the teacher or teachers under whom the work was completed; or (c) by an examination to be held by the state board of education in accordance with prescribed rules. Acts 1934, c. 65.

As grounds for removal of each of the five incumbents, it was alleged that at the time of their respective elections, and since, none of them had completed the eighth grade of the common schools, as shown by the school records, or as set out in (b), or qualified as provided in (c) of that portion of the act above quoted.

The five defendants filed both special and general demurrers to the petition, and without waiving same answered, admitting all the allegations with respect to the times of their elections and their assumption and incumbency of office, denying all allegations as to lack of qualification and eligibility. They each and all further pleaded that they were not required to meet the educational qualification test set up in the act of 1934, since it was specifically provided in the closing sentence of the act (Acts 1932, c. 77) that "Board members in office at the time this Act becomes operative may be reelected regardless of the educational qualifications set out in this Act."

From their answer the facts appear to be, and they are not denied, that Griffen and Smith were elected board members in 1929, and had held continuously until re-elected in 1933. Toms was elected in 1931 and re-elected in 1935. Marion Garrett was appointed in 1931, and was re-elected in 1935. Edwards was elected in 1935.

A reply admitted that the act of 1932, supra, con-

tained the exemption clause, and that Garrett, Griffen, Smith, and Toms were members of the board when the act became operative (some time in July, 1932), but insisted that chapter 39 (52) of the acts of 1924 required a candidate, in order to be eligible for the office of board member, should be "possessed of a common school education" and alleged that none of the four had acquired such common school education at the time of their respective elections, hence were not then qualified. By rejoinder the appellees denied the allegations of plaintiff's reply, and the plaintiff then filed surrejoinder in which it was pleaded that so much of the act of 1932 as undertook to relieve incumbents of the educational qualifications was and is unconstitutional. Thus the issues appear to have been finally joined.

It appears from the record that when the petition was filed, under allegations which would have ordinarily supported such action, the clerk of the court granted a temporary restraining order, the effect of which was to prohibit appellees and all of them from performing the duties of office, and receiving any emoluments. However, upon motion this restraining order was modified by the court and the appellees were permitted to function to the extent of preparing and presenting the current school budget and paying the teacher's salaries then due.

A mass of proof was taken by way of depositions, the greatest portion of which is foreign to the issues as presented by the pleadings. The cause was finally submitted on pleadings and proof, and the court passed up all motions, demurrers, and special pleas, and "not considering any of the testimony except such as was competent and material on the question of eligibility or qualifications" gave judgment. He held that Griffen, Smith, and Garrett were legal members of the board, since at the time of their respective elections in 1933, being incumbents, they were relieved of the necessity of showing eighth grade common school completion. He also held Toms to be legally holding because from the proof he was educationally qualified when elected in 1935, but that Edwards, also elected in 1935, was not qualified, and dismissed the petition as to Griffen, Smith, Garrett, and Toms. To this judgment, or so much thereof as held the four named above to be duly qualified, the plaintiff excepted, prayed, and was

granted an appeal, and to so much as held Edwards to be ineligible he objected and was granted an appeal.

Admitting the facts, such as relate to the dates of their various elections, appellant argues that none of the five are qualified, and bases the greater part of its contention on the plea that the exemption portion of the act of 1932 is unconstitutional, because in conflict with section 3 of the Bill of Rights, which prohibits the granting of separate emoluments or privileges to any individual, except where same be granted on account of some public service rendered. It is also urged that it amounts to class legislation, contravening section 59 of the Constitution.

Appellant correctly traces the history of enactments of laws relating to boards of education. Such boards were first provided for by the act of 1922, chapter 36. This act does not appear to have required any particular educational qualifications. In 1924, ch. 52 acts of that year, provided that to be eligible one should have a common school education. Thus the law remained until 1932 when the act of that year provided the eighth grade qualification. Therefore, appellant contends, none of the five were eligible in 1935, since they did not possess a common school education, as provided in the 1922 act.

We need not take time to discuss the meaning of the term "common school education," as used in the act of 1924. It might be difficult to correctly construe the term unless we adopted the idea expressed by later acts of the Legislature, which fixed the standard to be a completion of the eighth grade in the common schools. We may dismiss any further discussion on this point, when we observe that the pleadings of appellant do not by sufficient allegations put appellees on notice that their qualifications would be thus challenged.

Laying aside these contentions, we are of the opinion that as issues were raised by the pleadings, the only question presented, at least as to the three members who were elected in 1933, is whether or not the challenged clause in the act of 1932 act is valid. Counsel for appellant cites us to the cases of Ferguson v. Landram, 1 Bush (64 Ky.) 548, 593, and Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673, both of which dealt with special privileges and im-

munities in contravention of the bill of rights. We have carefully examined these cases and find no pronouncement in either which would lead us to hold the clause of the act here under consideration unconstitutional on the grounds urged.

The assembly, for reasons best known to its members, conceived it to be proper to relieve incumbents then in office from the necessity of meeting the new educational qualifications. It is suggested by appellee that perhaps "the sudden raise of qualifications demanded, would make it difficult at the outset to get a sufficient number of qualified members to create a Board of Education in many of the counties." It might have been better suggested that at the time of the act of 1932 there were in office many members who had served very efficiently for a long time, though not then possessing the evidence of qualification, due to the fact that formerly records were not so easily procurable. Perhaps the Legislature desired the change in standard to be gradual, both as a matter of necessity and for the proper conduct of the boards by old members, until opportunity for others to qualify as per the law. No matter what was the moving cause, it cannot now be questioned by the court, unless there appears an unreasonable classification.

The effect of the act was not to prohibit any qualified person in the state from offering for office. Nor did the act in effect prohibit any qualified voter from fully exercising the right of suffrage. All elections held under the act were in every respect free and equal. The exemption went only to the qualifications of those who proposed themselves, or were proposed by others, as prospective applicants.

The framers of our Constitution very wisely gave the law makers wide latitude when it came to legislate on matters pertaining to education. Section 183 of the Constitution provided that "the general assembly shall, by appropriate legislation, provide for an efficient system" of education. What that system is, or is to be, is left wholly to the discretion of the Legislature. Prowse v. Board of Education of Christian County, 134 Ky. 365, 120 S. W. 307; Elliott v. Garner, 140 Ky. 157, 130 S. W. 997.

The act, or the contested portion, does not appear

to be in conflict with section 3 of the Bill of Rights, nor with any subsection of section 59 of the Constitution, which latter is the section condemning special or class legislation. The General Assembly may for legislative purposes indulge in class legislation, subject always to the strict rule that such must be based on some difference which appears natural and reasonable. This is permitted to meet contingencies; to meet the needs of the people; to promote worthy public objects or the welfare or best interest of the people as a whole. Smith v. Board of Trustees, 171 Ky. 39, 186 S. W. 927; Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460. Such classification will not be disturbed by the court unless manifestly so arbitrary or unjust as to impose a burden upon, or exclude one or more of a class without a reasonable basis in fact. Shaw v. Fox, 246 Ky. 342, 343, 55 S. W. (2d) 11, 15. In this case we wrote on the principle here involved at some length, and a brief quotation will serve to clearly exemplify the law, and what is quoted is applicable to the question under discussion:

"No general rule can be stated upon which a reasonable basis of Legislative classification may be predicated, nor can it always be determined by analogy. The basis of classification of every act must be considered singly in the light of certain fundamental principles which are generally accepted by the courts. In ascertaining and determining the constitutionality of an act, it is a fixed rule of the courts to resolve all doubts in its favor (Coleman v. Hurst, 226 Ky. 501, 11 S. W. (2d) 133); nor will the courts inquire into and consider the practicability, the expediency, or the wisdom of the enactment. Coleman v. Hurst, supra. The only question to be determined by the court is one of constitutional inhibition, limitation, or restriction. State Budget Commission v. Lebus, 244 Ky. 700, 51 S. W. (2d) 965. Our Constitution does not delegate the power to make, nor does it prohibit the making of, classifications of subjects by the Legislature for legislative purposes, but merely prescribes inhibitions, limitations, or restrictions of the Legislature's power when making the classifications for legislative purposes (Rouse v. Johnson, 234 Ky. 473, 28 S. W. (2d) 745, 70 A. L. R.

1077), and the court is authorized to declare its classification invalid only when it contravenes or transgresses one or more of these inhibitions, limitations, or restrictions. State Board of Election Commissioners v. Coleman, 235 Ky. 24, 29 S. W. (2d) 619. The court it not at liberty to declare a legislative classification unconstitutional on the ground it violates public policy, as it is for the Legislature to determine the public policy so far as the state laws are concerned, and its determination thereof is only limited by the Constitution of the state and of the United States. Fiscal Court v. Pendleton County Board, 240 Ky. 589, 42 S. W. (2d) 885; Peak, Judge, v. Akins, 237 Ky. 711, 36 S. W. (2d) 351.''

With the foregoing rules of construction before us, we cannot determine that the classification questioned by appellant is arbitrary, unreasonable, or unfair.

We shall next take up the objections of appellant to the court's ruling in holding that Toms was eligible. As stated hereinbefore, Toms was elected in 1935, more than a year after the 1934 act had become effective. This act required the production of evidence of qualification, or in lieu thereof an examination. It is not contended by parties (though Mr. Toms himself so contended) that he was qualified by reason of his previous service on the board. Chapter 65 of the Acts of 1934 was in full force and effect when Toms was elected. That act specifically repealed section 4399a-1c, Ky. St. (chapter 77, Acts 1932), thereby striking out the exemption supra. No exemption to him or any one was extended by the 1934 act. Therefore, we are to determine his status by the proof of his qualification, as did the court below.

Mr. Toms testified for himself, and from a reading of his deposition it is not difficult to believe that he possessed a common school education; however, under the act this is not the test. He must display some one of the forms of evidence as fixed by the statute, showing that qualification. He presented first an unverified statement of a former superintendent of Casey county schools to the effect that he had passed an examination which entitled him to a teacher's certificate of the second class. This form of evidence was objected to as not

in compliance with the act. We need not pass on the question of its competency, since in addition Toms filed a properly verified statement of one who had been his teacher in the common schools in 1913 and 1914, in which it was stated that Toms had been a pupil in his school during those years. It was also shown that he was proficient in his work, and had completed the eighth grade, the teacher saying, "He was entitled to a diploma as having completed the work, if I had the right to give it."

We are of the opinion that the court below correctly held this to be sufficient evidence of educational qualifications, under paragraph ('b) of section 17, art. 5, c. 65, of the Acts of 1934. Much discussion is had in brief, principally appellee's, as to the form of procedure adopted and followed, the main contention being that in a quo warranto proceeding the court had no power to issue an injunction. From a casual reading of Hill v. Anderson, 122 Ky. 87, 90 S. W. 1071, 28 Ky. Law Rep. 1032, this is, perhaps, a correct conclusion. Appellee had his remedies, but took no advantage of the provisions of section 296 of the Civil Code of Practice, which provides a method by which, if entitled so to do, appellees may have rid themselves of the so-called temporary injunction. The record fails to show any such effort. Furthermore, no one seems to have suffered any injury on account of the court's continuing the temporary restraining order in modified form.

Another reason why we need not discuss pleading or procedure is that since we have concluded that the four members whose eligibility has been thus far discussed are found to have been eligible, nothing would be gained by them or, any one of them, if the procedure was improper. Mr. Edwards would be the only one benefited by a holding that the suit was improperly conducted. He is not before the court as a party appellee, according to the record, nor by cross-appeal. Notwithstanding this situation, we have read the evidence in so far as it relates to the matter of his eligibility, and he, testifying for himself, admits that he had progressed no further than the fifth or sixth grade in the common schools. It will be recalled that he was elected in 1935. The court correctly held that he had failed to show the necessary educational qualification to serve as a board member.

This action was begun in the form of a suit to declare the rights of the parties. We are of the opinion that the court's judgment correctly adjudged those rights.

Judgment affirmed.