[No. 28621. *En Banc.* February 17, 1942.]

J. C. CAMPBELL, *Appellant,* v. THE STATE OF WASHINGTON *et al., Respondents.*[1]

[1]Reported in 122 P. (2d) 458.

460

*Stevenson & Gershon,* for appellant.

*The Attorney General* and *John E. Belcher, Assistant,* for respondent.

*Riddell & Riddell, amici curiae.*

BEALS, J.—In his complaint in this action against the state of Washington and Thomas A. Swayze, its director of licenses, plaintiff alleged that he is duly licensed and qualified to practice dentistry in the state of Washington, owning and operating, under his own name of

"Dr. J. C. Campbell," a dental office in the city of Seattle; that he desires to open another dental office in the city of Tacoma, also under his own name as aforesaid; that the defendant director of licenses threatens to prevent plaintiff from opening and operating a second office in the city of Tacoma, claiming that in so doing plaintiff would violate Rem. Rev. Stat. (Sup.), § 10031-18 [P. C. § 1931-48], Laws of 1937, chapter 45, p. 125, § 1, which reads in part as follows:

"It shall be unlawful for any person to conduct a dental office in his or her name, or advertise his or her name in connection with any dental office or offices, unless such person is personally present in said office operating as a dentist or personally overseeing such operations as are performed in said office or each of said offices during a majority of the time said office or each of said offices is being operated: *Provided, however,* That this section shall not prohibit any person from continuing to conduct any office or offices legally conducted in this state at the time this act takes effect."

Plaintiff further alleged that he intended to participate in the ownership and management of the Tacoma office by contract with a regularly licensed dentist in the state of Washington, and that the state statute pursuant to which the defendant director of licenses was proposing to proceed against plaintiff was unconstitutional as in violation of the constitution of the United States, and also in violation of the constitution of the state of Washington.

Defendants demurred to the complaint upon the ground that the same failed to state facts sufficient to constitute a cause of action, and after argument the superior court sustained the demurrer. Plaintiff having elected to stand upon his complaint, and having refused to plead further, judgment was entered dismissing the action, from which plaintiff has appealed.

Appellant contends that the trial court erred in sustaining the demurrer to his complaint, and in entering judgment dismissing the action.

Appellant argues that the statute is void as in violation of Art. XIV, § 1, of the constitution of the United States, which reads in part as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, . . . ."

and also violates Art. I, § 3, of the constitution of the state of Washington, which provides that "no person shall be deprived of life, liberty, or property without due process of law," and violates § 12 of the same article, which provides that

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

Plaintiff so drafted his complaint as to directly present the constitutional questions above set forth, and in his brief his counsel frankly admit that, according to his plan, he, Dr. J. C. Campbell,

" . . . would not be personally present in said Tacoma office, or operating as a dentist, or personally overseeing such operations as are performed in said office, during a majority of the time the Tacoma office would be in operation."

Appellant, in arguing that the statute in question violates the due process sections of the state and Federal constitutions, relies strongly upon the opinion of this court in the case of *State v. Brown*, 37 Wash. 97, 79 Pac. 635, 107 Am. St. 798. Appellant contends that this case is squarely in point, and requires re-

versal of the judgment appealed from. Edwin J. Brown was prosecuted upon an information charging him with "the crime of owning, running and managing a dental office or department in the state of Washington, without a license," in violation of chapter 152, p. 314, Laws of 1901, a statute relating to the practice of dentistry. From a judgment of conviction, the defendant appealed to this court, contending that that portion of the statute which required a license from the state board of dental examiners as a prerequisite to "owning, running or managing" a dental office or department, was unconstitutional. This particular question was the only one considered or decided by this court, it having been held that the police power of the state did not include the right to so restrict the ownership or management of property. In the course of the opinion, the court stated that "to own and manage property is a natural right, and one which may be restricted only for reasons of public policy, clearly discernible." The statute in question in the *Brown* case, and which this court held unconstitutional, concerned the owning, running, and managing of a dental office or department by one not holding a state license to practice dentistry.

The statute attacked by appellant forbids any person to conduct a dental office in his name unless he is personally present in such office a majority of the time. The owning, running, and managing of a dental office is one thing; the use of the name of a licensed dentist in connection with the conduct of a dental office, and the advertising of the name of a licensed dentist in connection with the conduct of such office, is an entirely different thing. The statute held unconstitutional in the *Brown* case unwarrantedly interfered with the lawful ownership of property, while the statute here in question more nearly enters the field of the preven-

tion of false advertising, which has of recent years engaged the attention of the Congress of the United States and the legislatures of the different states.

The law of which appellant complains does not purport to interfere with his ownership of property, but merely forbids him to use his name in connection with the operation of a dental office where he is not present a majority of the time, as provided in the statute. The case of *State v. Brown* is not controlling on the phase of this case now under discussion.

■ As to the power of the legislature under the police power to regulate private interests, this court, in the case of *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, a case brought to determine the question of the constitutionality of the industrial insurance statute of this state, decided that the statute was constitutional, saying in the course of the opinion:

"If, therefore, the act in controversy has a reasonable relation to the protection of the public health, morals, safety or welfare, it is not to be set aside because it may incidentally deprive some person of his property without fault or take the property of one person to pay the obligations of another. To be fatally defective in these respects, the regulation must be so utterly unreasonable and so extravagant in nature and purpose as to capriciously interfere with and destroy private rights."

In the late case of *Shea v. Olson*, 185 Wash. 143, 53 P. (2d) 615, 111 A. L. R. 998, this court held constitutional chapter 18, p. 145, Laws of 1933, commonly known as the host-guest automobile liability statute, saying, concerning the police power:

"However difficult it may be to give a precise or satisfactory definition of 'police power,' there is no doubt that the state, in the exercise of such power, may prescribe laws tending to promote the health, peace,

morals, education, good order and welfare of the people. Police power is an attribute of sovereignty, an essential element of the power to govern, and a function that cannot be surrendered. It exists without express declaration, and the only limitation upon it is that it must reasonably tend to correct some evil or promote some interest of the state, and not violate any direct or positive mandate of the constitution."

This court has considered the scope of the police power in the cases of *Bowes v. Aberdeen,* 58 Wash. 535, 109 Pac. 369, 30 L. R. A. (N. S.) 709; *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861, L. R. A. 1915C, 287; *State v. Pitney,* 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A, 209; *Parrott & Co. v. Benson,* 114 Wash. 117, 194 Pac. 986; *Tacoma v. Fox,* 158 Wash. 325, 290 Pac. 1010.

Under our decisions, it is the rule that a statute enacted pursuant to the police power of the state cannot be held unconstitutional if it reasonably tends to protect the public welfare or health from a threat or menace of evil, even though the law operates to deprive a citizen of the right which he might otherwise enjoy to maintain a business, or pursue a profession, or endeavor to gain a livelihood, in the manner proscribed by law.

We said in the case of *Shea v. Olson, supra,*

"While, formerly, the power was viewed as one of strict and direct application, it has now come to be more favored on account of changed and changing economic and social conditions, and at present is frequently relied on to sustain laws which affect the common good in only an indirect way. . . . A large discretion is therefore vested in the legislature to determine what the public interest demands and what measures are necessary to secure and protect the same, . . . "

thus recognizing the modern tendency on the part of the courts to restrict the authority of the legislature

acting pursuant to the police power only when it clearly appears that constitutional rights are violated. Courts will not interfere with the exercise of the legislative authority unless the statute should be held arbitrary and without a reasonable relation to any evil sought to be corrected or guarded against. *State ex rel. Davis-Smith Co. v. Clausen, supra; McDermott v. State,* 197 Wash. 79, 84 P. (2d) 372; *State v. Sears,* 4 Wn. (2d) 200, 103 P. (2d) 337.

This court has several times recognized the rule that, in passing upon the constitutionality of a statute enacted pursuant to the police power, it is not necessary that the court find the existence of a state of facts which would justify the particular statute in question, it being sufficient if it be deemed within the bounds of reasonable possibility that such a state of facts may exist. *State v. Pitney, supra; Parrott & Co. v. Benson, supra; Tacoma v. Fox, supra; Shea v. Olson, supra.*

The existence of facts sufficient to justify the legislation here in question may reasonably be presumed. The portion of § 10031-18 here under attack, in common with the other provisions of that section, together with § 10031-1 [P. C. § 1931-31], *et seq.,* relative to the examination, licensing, and registration of practicing dentists and the rules of conduct to be observed by dentists in practicing their profession, constitute the body of our law regulating the practicing of the important profession of dentistry in this state. The safeguarding of the public health, and particularly the residents of this state as individuals, from the evils of incompetent and improper dental practices, is beyond question a justifiable exercise of the police power of the legislature. *State ex rel. Jordan v. Department of Licenses,* 130 Wash. 82, 226 Pac. 275.

The provision of the statute here under attack must

be considered with reference to the entire act of which it is a part. It may be presumed that, in the opinion of the legislature, the conduct of a dental office under the name of one who, although a licensed dentist, was not personally present in the office a majority of the time, was a pernicious practice, tending to mislead persons patronizing such office in the expectation that the services sought and paid for would be personally rendered or supervised by the dentist whose name is held out to the public as conducting the office. It cannot be held that the legislature was mistaken in acting upon the premise stated.

The relationship between dentist and patient is inherently personal in the highest degree. Certainly it is within the province of the legislature to protect the public against all forms of fraud and deception tending to conceal the professional identity of the dentist who is, in fact, rendering the service in the particular office frequented by one in need of dental assistance. By the practice denounced by the act, the public may be unwittingly deprived of a personal relationship which may rightfully be expected, and another personality substituted therefor. The use of the name of a certain dentist as conducting an office for the practice of dentistry should mean something more than merely physical ownership of the office, or the right to use the name, which may have a value because of long continued use or commercial advertising.

It may well be that the operation of the office in Tacoma, which appellant desires to open under his own name, would, in and of itself, result in no harm to the public. The legislature, however, was entitled to consider and deal with the general problem of the commercial exploitation of the dental profession. If, in the opinion of the legislature, chain office dentistry and dental offices conducted under corporate or fic-

titious names, or under the name of a dentist who has nothing to do with the practice of the profession in connection with the carrying on of the office, tend to introduce into the profession unscrupulous practices which tend to lower the ethics and standards of the dental profession, to the injury of the health of the community and the public welfare, the legislature had the power to place the limitation in question upon the general practice of the profession, even though in certain cases the act forbidden might not result in any of the evils which it was believed might follow from the frequent employment of the forbidden practice.

Appellant suggests a number of hypothetical situations, which he contends illustrate possible results from the enforcement of the statute, which would be violative of the' constitutional rights referred to. It is suggested that, under the provisions of the statute in question, the widow of a deceased dentist could not conduct her late husband's practice under his name, nor under her own name, unless she were a licensed dentist, and that a dentist engaged in the practice of his profession under his own name would violate the statute and become liable to the penalties thereof if he were absent from his office for a while because of illness or for any other reason of convenience or necessity. It is also suggested that dental products bearing the personal name of their producer could not be advertised in connection with any dental office unless the producer were personally present a majority of the time.

It must be assumed that a law will be given a reasonable and not a strained construction. We deem it unnecessary and inappropriate, in deciding the question here presented, to consider the possible application of the statute to the hypothetical situations suggested by appellant. Questions arising concerning the applica-

tion of the statute to questions such as those suggested will be reserved for future consideration, when actually presented for judicial determination.

Finally, appellant argues that the provision of the statute above referred to, and of which he complains, is unconstitutional because of the exception contained therein, which reads:

*"Provided, however,* That this section shall not prohibit any person from continuing to conduct any office or offices legally conducted in this state at the time this act takes effect."

Appellant contends that this proviso renders the law obnoxious to Art. I, § 12, of our state constitution, in that it creates a specially privileged class. It is vigorously contended that the classification pursuant to which some dentists are permitted to conduct dental offices in a manner forbidden to others is arbitrarily rested solely upon the mere caprice of time, and that such discrimination is completely lacking in any reasonable basis.

■■ In the recent case of *State v. Kitsap County Bank,* 10 Wn. (2d) 520, 117 P. (2d) 228, in which we had occasion to consider the limitations imposed by the state and Federal constitutions upon the legislative power to classify and discriminate, we said:

"Every presumption is in favor of the constitutionality of a legislative act, and . . . in matters of classification the legislature has a very broad discretion. . . .

"A classification which is based upon a substantial difference, and which is reasonably calculated to carry out the purposes of the statute, is not arbitrary. . . .

"The question is not whether there is in fact some discrimination, but rather whether the discrimination is justified."

Pursuant to the decided weight of authority, a legislative classification will not be held arbitrary

if based upon substantially different circumstances, and reasonably calculated to carry out a proper legislative purpose.

██ There must be a fixed time for the commencement of the operation of any law, and many statutory classifications are based solely upon the time element. It has been repeatedly held that discrimination resulting from the operation of the element of time, as between the rights attached to earlier and later dates, does not necessarily render the classification obnoxious to the equality clauses of the Federal and state constitutions.

██ As to the statute here under discussion, the time element is not the sole basis for the legislative differentiation. The time element simply serves to indicate the line of demarcation between the *mays* and the *may nots*. Other coinciding factors exist, which are important to the classification, and which form reasonable bases for the legislative action.

Persons within the exception have previously invested time, labor, and capital in the establishment of chain dental offices, when that form of dental practice was recognized as lawful. To prohibit the continued maintenance of such established dental offices might well result in pecuniary loss, while one who has not previously maintained any such office is not in the same manner affected by the prohibition of the statute. This consideration was deemed important in the case of *Manos v. Seattle*, 146 Wash. 210, 262 Pac. 965, in which this court upheld the constitutionality of a city ordinance prohibiting the maintenance of a dance hall within five hundred feet of any public park, the ordinance, however, expressly excepting from its operation dance halls which were lawfully operating at the effective date of the ordinance, and dance halls conducted under the supervision of certain designated groups. In discussing the argument that these excep-

tions amounted to an unreasonable discrimination, this court said:

"But it is not our opinion that either of these exceptions renders the ordinances invalid. The first was obviously intended as a relief for those actually engaged in the business the ordinances prohibit. They had investments therein, made when the business was lawful, and to cut them off arbitrarily could result in serious monetary losses. It must be remembered, furthermore, that the ordinances do not permit the perpetual existence of dance halls within the prescribed area. In time, more or less prolonged, all will be eliminated. It seems clear, therefore, that those actually engaged in the forbidden businesses stand on a different plane than do those who desire to commence the business anew."

In the case at bar, appellant argues that, if the evil of conducting a dental office in the name of one not personally present a majority of the time is of sufficient magnitude to justify a legislative proscription of that practice from and after a certain date, no good reason can exist for the making of any exception from the law, because the evil is as present in connection with the previously established dental office as it can be with offices more recently placed in operation. This identical argument was vigorously urged in the *Manos* case, and, among other reasons there assigned for holding the argument fallacious, this court called attention to the fact that, in the ordinary course of human events, the operation of any dance hall would not continue in perpetuity, but that, in time, existing dance halls would be eliminated. The same is true as to the operation of chain dental offices which were in existence prior to the effective date of the statute under attack in this case. In time, more or less prolonged, all such dental offices will cease to function.

We have no information as to how many of the excepted class of dental offices were in operation at the

time the statute became effective. At this time, there may be no such office in operation, but, assuming that there are some, it would seem unreasonable to place the legislative authority of the state, when it appeared desirable to legislate against an existing evil, in the difficult situation of being compelled to choose between a course which would possibly render proposed beneficial legislation obnoxious, upon the constitutional ground that it unwarrantedly interfered with vested constitutional rights, or, taking the other line, enact a law subject to attack for the reason that it could not operate *in futuro* because it undertook to preserve such vested rights.

Obviously, the legislative intent was to check future expansion of the objectionable practice, and thus eventually to completely eliminate the evil.

In the recent case of *Spokane v. Coon*, 3 Wn. (2d) 243, 100 P. (2d) 36, it was held that "a law which reduces or prevents the increase of the number of fire hazards does tend toward the safety of the public." It is also true that a law which reduces or prevents any increase in an existing evil tends to safeguard the public welfare. The legislature may thus prevent the extension of objectionable practices, without also abolishing all similar existing evils, where the more inclusive legislation would produce considerable hardship. *Ex parte Stoltenberg*, 165 Cal. 789, 134 Pac. 971.

Appellant argues that the exception tends to create a monopoly for the benefit of those who may lawfully operate thereunder, and continue a practice forbidden to others. It is true that such persons may exercise a privilege denied to others, but this same result follows from many lawful statutory classifications. Certainly such persons are granted no monopoly in the sense that competition with them is limited. By any lawful classification, rights more or less exclusive are vested in

particular classes of persons. If for this reason legislative classification is unlawful, it would seem that such classifications could seldom be sustained.

Questions similar to that here presented have often received the attention of the courts, and the overwhelming majority of the decided cases support the validity of regulatory legislation which classifies and fixes the rights of those subject to the regulation, according to their conduct and status at the effective date of a legislative enactment.

Many regulatory statutes are in force which exempt from the statutory prohibition operations which were being conducted pursuant to law prior to the effective date of the statute. *Manos v. Seattle, supra.* In the case of *Fox v. Territory of Washington,* 2 Wash. Terr. 297, 5 Pac. 603, the constitutionality of a territorial statute, which established certain standards and qualifications as prerequisites to the practice of medicine and surgery, was upheld as not in violation of the constitution of the United States, although the law exempted from its operation those who were engaged in practice when the law was enacted.

In *State v. Fraternal Knights and Ladies,* 35 Wash. 338, 77 Pac. 500, this court upheld the constitutionality of a statute fixing certain minimum insurance rates to be charged by corporations thereafter created or permitted to do business in this state, existing corporations which had been doing business in the state being exempted from the regulatory provisions of the law.

In the case of *Hines v. Jenkins,* 237 Ky. 676, 36 S. W. (2d) 387, the court of appeals of Kentucky upheld the right of a city to enforce a resolution refusing any further permits to install and maintain gasoline pumps upon the public sidewalks, while permitting fifty-one such pumps, previously licensed, to continue to operate.

In the case of *Spokane v. Coon, supra,* it was argued

that an ordinance of the city, which provided that "no frame building not now used shall be used for a hospital, asylum, or sanitarium for human beings," was invalid because it exempted existing buildings from the requirements of the ordinance, in violation of the equality clauses of the Federal and state constitutions. The case cited presented squarely the question of the right of the city to by ordinance permit the continued use of frame buildings as hospitals, and to forbid. the use of frame buildings for hospital purposes after the effective date of the ordinance. The evil to be corrected was manifestly the danger from fire. This court held that the ordinance was valid as a reasonable exercise by the city of its legislative authority to classify.

The supreme court of California, in *Ex parte Stoltenberg, supra,* held valid an act of the legislature of California relating to tenement houses, the statute being attacked on the ground that it unreasonably discriminated between buildings occupied as tenement houses prior to the effective date of the act and buildings devoted to the same purpose after the act had taken effect. It was held that the classification was not unreasonable, and that a substantial and logical difference between the two classes of buildings existed, which justified the difference in treatment by the legislature. .

The following authorities are also in point: *Schostag v. Cator,* 151 Cal. 600, 91 Pac. 502 (requirements imposed upon voters thereafter registering but not upon those theretofore registered).; *Ex parte Whitley,* 144 Cal. 167, 77 Pac. 879 (exempting practicing dentists from certain requirements of the act regulating the practice of dentistry); *People v. Logan,* 284 Ill. 83, 119 N. E. 913 (exempting practicing barbers from the requisite of taking an examination as a condition to the issuance of a certificate of registration); *State v.*

*Creditor,* 44 Kan. 565, 24 Pac. 346 (granting exemption from requirement of dental school diploma to practicing dentists); *State v. Randolph,* 23 Ore. 74, 31 Pac. 201, 17 L. R. A. 470 (granting exemption from examination to practitioners of medicine or surgery when the act was passed). For additional cases to the same effect, see: *Commonwealth v. Griffen,* 268 Ky. 830, 105 S. W. (2d) 1063; *People v. Phippin,* 70 Mich. 6, 37 N. W. 888; *Ex parte Sepulveda,* 108 Tex. Crim. App. 533, 2 S. W. (2d) 445.

Appellant relies upon two recent decisions of this court. In *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101, this court held invalid, as forbidden class legislation, a statute regulating the salmon industry, in that it granted the right to fish with gill nets to all persons who held licenses during the years 1932 and 1933, while all other persons were prohibited from fishing with such an appliance. The opinion clearly states the reasons for the conclusion reached by the court, and the facts differ so greatly from those here presented that the case is not in point. In the course of the opinion, the court was careful to observe:

"This case does not present a factual situation requiring the exercise of regulatory functions with respect to an industry generally and directed toward certain professions, vocations, or pursuits, with the view of establishing such qualifications as will best promote the health, morals, or welfare of the people."

In the case of *Nicholls v. Spokane Public School District,* 195 Wash. 310, 80 P. (2d) 833, 82 P. (2d) 857, the principal question considered was whether the statute under attack violated Art. II, § 28, subd. 15, of our state constitution, relating to special laws, rather than whether the statute was obnoxious to Art. I, § 12, *supra.*

In deciding such questions as this, each case must be considered upon its own facts. The exercise of leg-

islative authority, through the police power, vitally concerns many matters of great public importance. Whether or not each particular statute or ordinance is reasonable must depend largely upon the wording of the statute, the evil which it is intended to correct, and the means taken to accomplish the end desired.

Before the courts will hold a regulatory statute, such as that now before us, unconstitutional, as based upon an unreasonable or discriminatory classification, it must appear that no sound basis exists for the classification as laid down by the legislature. Any doubt would be resolved in favor of the validity of the legislative act.

On the facts present in the *Bacich* and *Nicholls* cases, *supra*, this court was unable to find any reasonable basis for the legislative classifications. In the *Bacich* case, the persons whom the law granted a privilege denied to others were allowed to catch fish on the same basis as the public at large, while the *Nicholls* case involved the validity of a statute forbidding the purchase by certain public institutions of fuel other than that mined or produced within the state of Washington, with a rather complicated exception in favor of an institution which at the time of the passage of the act was using imported fuel.

On the other hand, the practice of medicine, surgery, dentistry, and the healing arts has always been deemed a proper subject for careful and precise legislation. In the case of *Lambert v. Yellowley*, 272 U. S. 581, 71 L. Ed. 422, 47 S. Ct. 210, 49 A. L. R. 575, the supreme court of the United States, in considering questions utterly unlike those here presented, said: "There is no right to practice medicine which is not subordinate to the police power of the States." Clearly, a reasonable basis exists for the classification contained in the statute which appellant attacks.

Appellant argues that this case is distinguishable from many of the cases in which statutes or ordinances alleged to be discriminatory have been upheld, because the statute here in question absolutely forbids one desiring to conduct two or more dental offices at one and the same time, while in other cases the acts have not been absolutely forbidden, but merely made more difficult or expensive by the requirement of certain necessary prerequisites, which, however, are capable of being accomplished. Some of the cases relied upon by respondent may be, in a measure, distinguished, as argued by appellant, but in the case of *Manos v. Seattle, supra,* the prohibition was absolute, and the same is true of the facts in the case of *Spokane v. Coon, supra,* in which the use of a frame building for hospital purposes was absolutely forbidden, unless the building had been devoted to that use at the effective date of the ordinance. In other cases which we have cited, the prohibition was also absolute. Our decisions above referred to are controlling upon this phase of the case at bar.

The trial court did not err in sustaining respondent's demurrer to appellant's complaint, and the judgment appealed from is affirmed.

MAIN, BLAKE, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

ROBINSON, C. J., STEINERT, and MILLARD, JJ., dissent.