326 P.2d 1075

STATE of New Mexico, Plaintiff-Appellee,
v.
John W. MYERS, Defendant-Appellant.

STATE of New Mexico, Plaintiff-Appellee,
v.
E. T. HOARD, Defendant-Appellant.
Nos. 6268, 6269.

Supreme Court of New Mexico.
May 6, 1958.
Rehearing Denied June 13, 1958.

Hannett, Hannett & Cornish, Albuquerque, for appellants.

Fred M. Standley, Atty. Gen., Paul W. Robinson, Dist. Atty., Albuquerque, Charles D. Harris, Special Asst. Atty. Gen., for the State.

SHILLINGLAW, Justice.

These two consolidated cases came before the court on appeals from verdicts and judgments of the lower court wherein appellant Myers was found guilty of a violation under § 75–11–16, N.M.S.A.1953, and appellant Hoard was found guilty under § 75–11–13, N.M.S.A.1953, and each was sentenced to pay a fine of $25, which sentences were suspended.

The appellant, John W. Myers, was accused under an information which read as follows:

"* * * accuses John W. Myers of Illegal Drilling of Well and charges that on or about the 31st day of January, 1957, at the County of Bernalillo, State of New Mexico, the said John W. Myers did permit the drilling, deepening, repairing or cleaning of a well for water from an underground source upon property owned by the said John W. Myers by a person other than a licensed driller."

The appellant, E. T. Hoard, was accused in the information of "Drilling a Well Without a License," the information continuing:

"and charges that on or about the 31st day of January, 1957, at the County of Bernalillo, State of New Mexico, the said E. T. Hoard did drill, deepen, repair or clean or begin the drilling, deepening, repairing or cleaning of a well for water from an underground source,

without having a valid existing license for the drilling of such well, or permit for the repair, deepening or cleaning of such well, and that such well was located near Edith Blvd., NE, North of Osuna Road, County of Bernalillo, State of New Mexico."

Section 1, Ch. 178, Laws of 1949, which is § 75–11–13, N.M.S.A.1953, provides:

"It shall be unlawful for any person, firm or corporation to drill or to begin the drilling of a well for water from an underground stream, channel, artesian basin, reservoir or lake (hereinafter referred to as 'underground source') the boundaries of which have been determined and proclaimed by the state engineer of New Mexico to be reasonably ascertainable, without a valid, existing license for the drilling of such wells issued by the state engineer of New Mexico in accordance with the provisions of this act (75–11–13 to 75–11–18), and the rules and regulations promulgated by him in pursuance hereof."

Pursuant to the authority vested by the above statute the state engineer did, on November 29, 1956, declare:

"Whereas, the waters of underground streams, channels, artesian basins, reservoirs, or lakes, having reasonably ascertainable boundaries, are public waters and are subject to appropriation for beneficial use, and

Whereas, all natural waters flowing in streams and watercourses, whether such be perennial or torrential, within the State of New Mexico, belong to the public and are subject to appropriation for beneficial use, and

Whereas, the State Engineer has determined from scientific investigation that an underground basin exists in the Rio Grande Valley, the area and boundaries of which basin are reasonably ascertainable, and

Whereas, the waters of said basin are interrelated with the flow of the Rio Grande Stream System, so that such underground waters are a substantial source of the flow of said stream system, and

Whereas, the waters of the Rio Grande Stream System are fully appropriated, and

Now, Therefore, It Is Hereby Declared that the lands described hereinafter comprise an underground water basin, to be known as the Rio Grande Underground Water Basin, subject to the New Mexico statutes, and the rules and regulations of the State Engineer: * * *."

There follows description of an area along each side of the Rio Grande and extending from the Elephant Butte Reservoir to the New Mexico-Colorado line.

The informations were filed on February 5, 1957. Appellants filed a motion to quash in each case, which motions were overruled. A plea of abatement was filed in each of said cases and was overruled. Thereafter, the cases were heard upon stipulated facts, a portion of which follows:

"1. That the plaintiff State of New Mexico agrees that the facts stipulated in paragraphs 3, 4, 6, 7, 8, 9, 10, 14, 15, 16 and 17 are true but object to their introduction or their being considered by the Court for the reason that it is the contention of the State that the only material facts are, (1) the order of the State Engineer (2) that a well was repaired by the defendant Myers without making application to the State Engineer and that the defendant Hoard repaired said well not having a license from the State Engineer under the order and rules of the State Engineer.

"2. That the purpose of this stipulation is to provide a speedy method of bringing before the Supreme Court of the State of New Mexico the validity of the State Engineer's said order and his jurisdiction to make it, and whether or not the defendants have been guilty of a crime.

"3. That the defendant John W. Myers owns a certain tract of land in Bernalillo County, New Mexico, within the Rio Grande Conservancy District

described as follows: (description omitted)

"4. * * * That he purchased the above described lands in the year 1941 and found a pit thirty feet deep in the southeast corner of said lands and a cased well with a centrifugal pump at the bottom of said pit attached to a casing which applied water to a portion of the land in question, which said well was installed by the then owner, Stephen Roehl, in the year 1916.

"5. That in the year 1953 a second well was drilled some ten feet from the old well last above mentioned and the old well was abandoned. The new well developed trouble with an excess of sand during the irrigation season of 1956 and the defendant Myers employed the defendant Hoard to clean the same and deepen it and was thereupon arrested in this cause for so doing.

"6. That said property has been irrigated and has had wells on the same for upwards of one hundred years last past. * * *

"7. That the defendant Myers operates a sanatorium on said property * * *. The water supply for said sanatorium is conducted from the well in question in this case by pipe to the sanatorium and is used for sanitation and domestic purposes. The balance of the water is used to irrigate defendant Myers' nursery.

"8. * * *

"9. * * * The Alameda Lateral, which is a part of the Rio Grande Conservancy District water delivery system, runs the full extent of defendant Myers' land from north to south and there is an older ditch still visible at places which served this property prior to the construction of the Rio Grande Conservancy System.

"10. That the water rights on the Rio Grande River have never been adjudicated nor have the priorities between water users been established by a decree of any court.

"11. That on the 29th of November, 1956, the State Engineer of the State of New Mexico entered an order declaring an area of the Rio Grande River Valley an underground water basin bounded on the north by the Colorado and New Mexico State Line and on the south by the Elephant Butte Dam, as will more fully appear from said order, * * *

"12. That subsequent to November 29, 1956, the defendant John W. Myers, M. D., engaged the defendant E. T. Hoard to repair a certain well situated on the property of the defendant John W. Myers. That the defendant Myers did not obtain a permit from the said State Engineer to repair said well. That the defendant E. T. Hoard is engaged in the business and occupation

of drilling water wells and had a general contractors' license to drill wells but had not obtained well driller's license from the State Engineer of the State of New Mexico, pursuant to 75–11–13, N.M.S.A.1953 Compilation, both the defendant Myers and the defendant Hoard contending, * * * that the State Engineer was without authority or jurisdiction to make said declaration declaring said area an underground water basin or to interfere with defendant Myers' ancient vested water rights.

"13. That all the waters of the Rio Grande River have been appropriated.

"14. That the United States of America, acting through its proper officials, filed with the then State Engineer of the Territory of New Mexico, in full compliance with Section 49, Chapter 40 of the Laws of 1907, an application to appropriate all of the unappropriated waters of the Rio Grande above the Elephant Butte Dam to insure an adequate water supply to satisfy a treaty obligation to the Republic of Mexico to deliver 60,000 acre-feet per annum to that Country and, likewise, to supply for irrigation and domestic purposes waters of the River in Dona Ana County, New Mexico, and the State of Texas, which application was approved by the Territorial Engineer.

"15. That the Rio Grande is a water course with well defined banks, having its source in the State of Colorado and emptying into the Gulf of Mexico.

"16. That users of Rio Grande water below the Elephant Butte Dam are permitted by the State Engineer to drill and repair wells without let or hindrance.

"17. That both Texas and Colorado permit the drilling and repairing of wells on the Rio Grande water shed and in the Rio Grande River at the pleasure of their citizens and water users, and this stipulation is subject to such other objections as the plaintiff may file herein within 5 days hereof."

As appears from paragraph 1 of the stipulation the State contends that the only material facts are:

"(1) The order of the State Engineer

"(2) That a well was repaired by the defendant Myers without making application to the State Engineer and that the defendant Hoard repaired said well not having a license from the State Engineer under the orders and rules of the State Engineer."

The appellants assign twelve (12) errors and argue extensively against the judgment and correctness of the trial court, but we

feel we can fairly and briefly state their case to be; that the State Engineer had no right, authority or jurisdiction to declare the area in question an underground water basin simply because it is not an underground water basin, and consequently the area is not one in which it is necessary to obtain a permit from the state engineer to "drill or to begin the drilling of a well * * * without a valid, existing license for the drilling of such well issued by the state engineer of the State of New Mexico. * * *"

The appellants argue:

"The declaration of the State Engineer that the Rio Grande Valley from the State Line of Colorado to the Elephant Butte Dam is an underground basin 'having reasonably ascertainable boundaries' is absurd on its face."

and further state:

"A glance at the map attached to the Engineer's order discloses that the north boundary of the area declared to be an underground basin is a straight line, the arbitrary boundary line between the State of Colorado and New Mexico. Under all definitions known to the English language this could not be 'a reasonably ascertainable boundary.' The court will take judicial notice (Rule 44, New Mexico Rules of Civil Procedure) that this north boundary line is a turbulent water course and likewise that the Rio Grande is one of the great rivers of the United States, named 'The Grand River of the North' by the Spaniards, and is the subject of two great books, one by Harvey Ferguson and one by Paul Horgan. The latter book on the Rio Grande won the Pulitzer prize.

"The south boundary line is also an arbitrary straight line that has no relationship, scientific or otherwise, to an underground basin. Can the ambitious reach of a single state officer by a verbal fiat, in total disregard of the facts, declare an area that constitutes the vital midsection of the State of New Mexico an underground water basin, thereby detrimentally affecting the vested water rights to thousands of water right owners? If so, he can declare the top of Mt. Taylor or White Sands an underground water basin with 'reasonably ascertainable boundaries.' "

Appellants then further argue:

"We have never questioned at any time the constitutionality of this statute nor the jurisdiction of the State Engineer in areas like those mentioned at page 18 of Appellee's brief, i. e., 'Roswell Artesian Basin, Carlsbad Basin, Lea County Basin, Hot Springs Artesian Basin, Mimbres Basin, Virden Valley Basin, Animas Basin, Estancia Basin and Portales Basin.' There is not the slightest doubt but

that the State Engineer had the right, power, and constitutional authority to declare those basins underground basins because in truth and in fact they are basins."

The state engineer, whose statutory qualifications are found in § 75–2–1, N.M.S.A. 1953 Comp., and are as follows:

"There shall be a state engineer, who shall be a technically qualified and registered professional engineer * * "

did, as shown by the exhibit in the record, on the 29th day of November, 1956, declare the area in question to be the Rio Grande Underground Water Basin.

So in view of appellants' argument to the contrary we refer to the record to examine the evidence in support of appellants' contention. We find none. The appellants admit this lack of evidence but suggest that:

"This Court will not blind itself to obvious physical facts. We did not introduce evidence of a scientific nature from expert witnesses that the area in the Rio Grande Valley from the Colorado State Line to the Elephant Butte Dam is not and can not be an underground basin. We take it that the Court will take judicial notice that that is true.

"To begin with, the order declaring the Rio Grande from the Colorado State Line to the Elephant Butte Dam

an underground water basin is a scientific absurdity on its face, of which this Court will take judicial notice."

■ As authority appellants cite references to Hoefs v. Short, 114 Tex. 501, 273 S.W. 785, 40 A.L.R. 833; Vol. 2, Barron-Holtzoff, Federal Practice and Procedure, p. 681; Vol. 4, Barron-Holtzoff, Federal Practice and Procedure, p. 178–181. We do not question the statements there made but we prefer to reject the application of judicial notice in the case at bar on the same theory that the Supreme Court of the United States refused to take judicial notice of the non-navigability of the Rio Grande when it reversed United States v. Rio Grande Dam & Irr. Co., 9 N.M. 292, 51 P. 674 in United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 19 S.Ct. 770, 773, 43 L.Ed. 1136, saying:

"It is reasonable that the courts take judicial notice that certain rivers are navigable and others not, for these are matters of general knowledge. But it is not so clear that it can fairly be said, in respect to a river known to be navigable, that it is, or ought to be, a matter of common knowledge at what particular place between its mouth and its source navigability ceases. And so it may well be doubted whether the courts will take judicial notice of that fact. It would seem that such a matter was one requiring evidence, and to be determined by proof. That the Rio

Grande, speaking generally, is a navigable river, is clearly shown by the affidavits. It is also a matter of common knowledge, and therefore the courts may properly take judicial notice of that fact. But how many know how far up the stream navigability extends? Can it be said to be a matter of general knowledge, or one that ought to be generally known? If not, it should be determined by evidence."

We further are of the opinion that in view of the state of the record in this case we must presume that the action of the state engineer is correct. We find ourselves in agreement with the authority cited by the State and appearing in 73 C.J.S. Public Administrative Bodies and Procedure § 205, p. 556:

"On review of the acts or orders of administrative bodies, the courts will presume, among other things, that the administrative action is correct and that the orders and decisions of the administrative body are valid and reasonable; presumptions will not be indulged against the regularity of the administrative agency's action."

For the purpose of this opinion we recognize that the appellant Myers may have a valid existing water right pre-dating the State constitution. He argues at length that the action of the state engineer is repugnant to Article 16, Section 1, Const. of New Mexico, reading:

"All existing rights to the use of any waters in this state for any useful or beneficial purpose are hereby recognized and confirmed."

And Article 16, Section 2:

"The unappropriated water of every natural stream, perennial or torrential, within the state of New Mexico, is hereby declared to belong to the public and to be subject to appropriation for beneficial use, in accordance with the laws of the state. Priority of appropriation shall give the better right."

The cases cited by the appellants do not hold that the State may not in the exercise of its police power require a license of any person drilling a well in any area determined by the state engineer to be an underground source the boundaries of which have been determined to be reasonably ascertainable.

Concerning the police power of a state the Supreme Court of the State of Washington said in State v. Dexter, 32 Wash.2d 551, 202 P.2d 906, 907, 13 A.L.R.2d 1081, at page 1085 of the A.L.R. report:

"And in Campbell v. State, 12 Wash. 2d 459, 122 P.2d 458, we approved the following statement from Shea v. Olson, 185 Wash. 143, 153, 53 P.2d 615, 619, 111 A.L.R. 998: 'However difficult it may be to give a precise or satisfactory definition of "police power," there is no doubt that the state, in the

exercise of such power, may prescribe laws tending to promote the health, peace, morals, education, good order, and welfare of the people. Police power is an attribute of sovereignty, an essential element of the power to govern, and a function that cannot be surrendered. It exists without express declaration, and the only limitation upon it is that it must reasonably tend to correct some evil or promote some interest of the state, and not violate any direct or positive mandate of the constitution.'"

As to rights of property that court stated in 32 Wash.2d 551, 202 P.2d 909, at page 1088 of 13 A.L.R.2d:

"Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment, as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient."

In treating a state's exercise of its police power in connection with water rights, the Utah Supreme Court said in Eden Irr. Co. v. District Court of Weber County, 61 Utah 103, 211 P. 957, at page 961:

"The state, therefore, in its governmental capacity, has a right to regulate, within reasonable bounds the use of water although the right to the use may have been adjudicated. No doubt, in administering the law for the protection of all and for the public good, some inconvenience will result. Such inconveniences, however, cannot be avoided and must be tolerated for the public good. Certainly no constitutional rights are invaded by such inconveniences."

We find § 75–11–13 and § 75–11–16, N.M.S.A., 1953 Comp., to be legitimate exercise of the police power of the State.

In passing, we note that Section 75–11–13, N.M.S.A., 1953 Comp., was amended by the 1957 legislature and as amended now reads:

"It shall be unlawful for any person, firm or corporation to drill or to begin the drilling of a well for water from an underground stream, channel, artesian basin, reservoir or lake (hereinafter referred to as 'underground source') the boundaries of which have been determined and proclaimed by the state engineer of New Mexico to be reasonably ascertainable, without a valid, existing license for the drilling of such wells issued by the state engineer of New Mexico in accordance with the provisions of this act, and the rules and regulations promulgated by him in pursuance hereof. Such license shall not be required for the con-

struction of a driven well; Provided, that the casing for such well shall not exceed two and three-eights (2⅜) inches outside diameter."

Finding no error the judgment is affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.

## On Motion for Rehearing

SHILLINGLAW, Justice.

The appellants, in their motion for rehearing, raise points which we do not deem controlling. However, in the brief in support of the motion one point is argued which we feel requires clarification.

It will be noted that the State Engineer in his order of November 29, 1956, declaring the Rio Grande Underground Water Basin further ordered that:

"Any person wishing to drill, deepen, repair, or clean one or more water wells * * * shall first obtain a water well drillers license from the State Engineer."

The charge against the appellant Myers was that he "did permit the drilling, deepening, repairing or cleaning of a well * * by a person other than a licensed driller."

The charge against the appellant Hoard was that he did "drill, deepen, repair or clean * * * a well * * * without having a valid license."

The parties in the court below stipulated that the defendant Myers employed the defendant Hoard to clean, deepen and repair the well located upon the land of the defendant Myers.

The court below in its decision recited the charge against the appellant Myers to be "illegal drilling of a well," and the charge against the appellant Hoard to be "drilling of a well without a license."

The theory on which the case was tried was that deepening a well constituted drilling a well. Nowhere in the court below or in the brief on the appeal was it argued that the appellants' acts were not within the statutes Sections 75–11–13 and 75–11–16, N.M.S.A. Our opinion is to be construed in that light. We are not deciding that the State Engineer has the authority to require a permit for the cleaning or repairing of a well, as that phase of his authority is not before us on this appeal.

Our holding in the original opinion is affirmed and the motion for rehearing will be denied.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.