James "Tonto" COMBS, Appellant,

v.

Carlos "Jake" HUFF, Appellee.

No. 93–SC–138–TG.

Supreme Court of Kentucky.

May 18, 1993.

James J. Barrett, III, Pillersdorf, Derossett & Barrett, Prestonsburg, for appellant.

Ronald G. Combs, Gullett, Combs & Wireman, Hazard, for appellee.

LAMBERT, Justice.

At issue here is the constitutionality of SCR 1.060, a rule promulgated by this Court and effective on January 1, 1987. In substance, the rule provides that no person other than an incumbent shall be eligible to seek the office of circuit court clerk without having first attained a passing grade of 70% or more on a standard examination administered by the Administrative Office of the Courts.[1] Appellant contends that

---

1. For convenient review, SCR 1.060 is here reproduced in its entirety:

"(1) Pursuant to Section 100 of the Constitution of Kentucky no person shall be eligible to seek the office of circuit clerk unless he shall have procured from a judge of the Court of Appeals, or a judge of the Circuit Court, a certificate that he has been examined by the clerk of his court under his supervision, and that he is qualified for the office for which he is a candidate.

(2) No such certificate shall be issued to any person unless that person has received a passing grade of 70% or more on a standard examination to be prepared and administered by the Administrative Office of the Courts. The examination shall include questions pertaining to the materials included in the Circuit Clerk's Manual, Circuit Clerk's Accounting Manual, and the Personnel Policies of the Court of Justice.

the rule violates Section 100 of the Constitution of Kentucky, the separation of powers provision of our Constitution, and results in a denial of his equal protection rights under the constitutions of Kentucky and the United States. This Court granted transfer from the Court of Appeals following the trial court's decision upholding the constitutionality of the rule and judgment for appellee.

In the trial court the parties stipulated the facts. Appellant and appellee, and only they, filed for the Democratic nomination for the office of Clerk of the Knott Circuit Court. Appellee is the incumbent clerk, having held such position since 1964. Appellant sat for but failed to pass the examination required by SCR 1.060. By virtue of his incumbency and a provision of the rule, appellee was not required to take the examination.

█ Appellant first contends that SCR 1.060 violates Section 100 of the Constitution of Kentucky by requiring that eligibility be determined prior to gaining access to the election ballot. He acknowledges the power of this Court to establish a standardized examination for determination of qualifications, but insists that the Constitution requires an opportunity to obtain certification after the election but prior to assuming office. Appellee responds that the express authority conferred on the Judiciary by Section 100 for determining the qualifications of clerks is broad enough to permit a rule that such determination be made prior to the filing deadline or prior to assuming office.

The first step in our analysis is to examine the language used in the Constitution. The relevant portion is the last sentence of Section 100, as follows:

"No person shall be eligible to the office of Clerk unless he shall have procured from a Judge of the Court of Appeals, or a Judge of a Circuit Court, a certificate that he has been examined by the Clerk of his Court under his supervision, and that he is qualified for the office for which he is a candidate."

Initially, we observe that the duty to determine eligibility was imposed on a judge of the circuit court or Court of Appeals. With the adoption of the Judicial Article, Constitution Sections 109–124, effective January 1, 1976, the Court of Justice became a unified judicial system. See Constitution of Kentucky, Section 109. By virtue of Section 110(5)(b), which designates the Chief Justice as executive head of the Court of Justice, and the rule-making power conferred on the Supreme Court by Section 116 of the Constitution, it is indisputable that the duty to determine clerk eligibility formerly imposed on any Circuit Judge or any Judge of the Court of Appeals now rests exclusively with the Supreme Court. As such, there could be no serious contention that this Court lacks plenary power to determine clerk eligibility limited only by express provisions of the Constitution. See *Ex Parte Farley*, Ky., 570 S.W.2d 617 (1978).

The first portion of the last sentence of Section 100 requires that eligibility be determined at some point in time prior to the assumption of office. From the language used, "no person shall be eligible to the office of Clerk unless he shall have procured ...," the determination would appear to be appropriate at the time of taking office. However, the last portion of the sentence, "that he is qualified for the office for which he is a candidate," suggests that the determination should be made prior to the election. From the language used, we are left without a firm conviction as to when the Delegates to the Constitutional Convention intended the determination to

(3) The examination shall be given once each year in which circuit clerks are elected on the third Saturday in January. No person shall be eligible to appear on any election ballot for the office for circuit clerk who has not successfully completed the examination in the year of such election, and been so certified except no incumbent circuit clerk shall be required to be re-certified.

(4) In the event of a vacancy in the office of circuit clerk, a special examination shall be prepared by the Administrative Office of the Courts to be administered to such person or persons designated by the chief circuit judge responsible for filling the vacancy by appointment, and to be administered to prospective candidates for election to fill the unexpired term."

be made, whether during the period in which an aspirant was considered a candidate, after the election, or whether the matter was left entirely to the discretion of the certifying judge. If, as appellant contends, the Delegates had intended to leave the determination until after the election, appropriate language such as "the office to which he was elected" could have easily been employed. The fact is, one portion of the controlling sentence suggests a post-election determination and the other suggests that the determination be made prior to the election. It is clear, however, that considerable discretion was vested in the judiciary to grant or deny the certificate of eligibility.

The foregoing discussion leads straightaway to this Court's decision in *Kirkpatrick v. Brownfield,* 97 Ky. 558, 31 S.W. 137 (1895), in which the issue was whether one elected to the office of County Court Clerk of Larue County had complied with the requirements of Section 100. Despite an imperfect attempt to obtain the required certificate prior to the election, following the election at which appellant received the greater number of votes he obtained the certificate from the Circuit Judge. The losing candidate then brought an action challenging the appellant's right to the office and this Court denied the challenge. To reach its conclusion, the Court engaged in a tortuous analysis of the language of Section 100 holding, among other things, that the word "eligible" should not be given its primary meaning because absurdity would result, but instead should be defined as "legally qualified." By this definition, the Court concluded that harmony could be achieved throughout Section 100 and other constitutional sections which employ similar language. It is significant to the instant case that the Court did not consider the last portion of Section 100 which refers to the qualifications of one "for the office for which he is a candidate." The reason for the failure of the Court to construe this language is obvious, however, because no challenge was asserted until after the election was over and the successful candidate had procured his certificate from the Circuit Judge. The question of entitlement to appear on the ballot was not presented as the litigation occurred, but only after the election and certification. Thus, on review the issue was not, strictly speaking, whether an opportunity for post-election certification was mandated, as is contended here, but whether post-election certification was permissible and whether the act of the Circuit Judge should be upheld or nullified. As we read it, *Kirkpatrick* does not stand for the proposition that one is constitutionally entitled to a post-election opportunity to gain certification. The Court merely affirmed the power of the Circuit Judge, who was without any rules of court other than those he had declared, to grant certification after the election and until the time for taking office. *Kirkpatrick* should not be read as recognizing a constitutional right to post-election certification, but as merely establishing the right of the rule-making authority to permit certification at that time if it determines such to be appropriate.

As demonstrated by the foregoing authorities, neither the language of the Constitution nor case law has definitively established the point in time at which the certification must take place, but the deference to the judiciary in this regard is clear. With the adoption of the Judicial Article and creation of a unified court system, this Court was granted rule-making power over matters affecting the Court of Justice. The power exercised by the trial court in *Kirkpatrick* now rests with the Supreme Court. It follows, therefore, that this Court may promulgate rules for circuit court clerk certification provided no constitutionally secured right is infringed.

Prior to concluding this issue, we observe that if *Kirkpatrick* were applied as appellant urges, one elected circuit court clerk would be entitled to take one examination after another from the time of the election until the time for assuming office. Such a practice would render the examination requirement an absurdity. The duty of the judiciary to determine the qualifications of those who seek to be circuit court clerk is expressed in Section 100 of the Constitution. The Delegates to the Consti-

tutional Convention recognized the essential nature of the office to the efficient operation of circuit courts and since adoption of the Constitution of 1891, acts of the General Assembly and rules of this Court have enhanced the duties of the office in both volume and complexity. Circuit court clerks are now required to account for substantial sums of money, supervise large staffs of deputy clerks, issue drivers' and boat licenses, maintain the safety and integrity of the records of the Court of Justice, and, in general, perform many of the most important functions of the Court of Justice. Therefore, it is the duty of this Court, pursuant to the power conferred by the Constitution, to promulgate and enforce meaningful rules and procedures to assure that each clerk is competent to discharge the duties of the office. We will refrain from any construction of the Constitution which would depart from its manifest intent.

■ Appellant's contention that promulgation of SCR 1.060 violates the separation of powers doctrine contained in Sections 27 and 28 of the Constitution of Kentucky is convincingly defeated by reference to Section 100. There, Judges of the Circuit Court and Court of Appeals are given express power to determine the qualifications of circuit court clerks and this is augmented by various provisions of the Judicial Article. SCR 1.060 merely defines the manner in which the certification required by Section 100 shall be obtained and creates uniformity of certification throughout Kentucky. As such, the intent and effect of the Rule are pursuant to this Court's established authority and do not transgress the province of the Legislature.

■ Appellant's final constitutional challenge arises out of the exemption from examination granted incumbent clerks by SCR 1.060(3). He contends that this provision violates his equal protection rights guaranteed by the Constitutions of Kentucky and the United States.

Initially, we observe that appellant and other non-incumbents are not members of a "suspect class" which calls for heightened scrutiny of the rule, and that there is no fundamental right to gain ballot access. *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); and *Chapman v. Gorman*, Ky., 839 S.W.2d 232 (1992). As an aside, appellant may be likewise without standing to raise a First Amendment challenge on behalf of the voters of Knott County as no such voters joined him as parties to this litigation. *Chapman v. Gorman, supra;* and *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). As such, the issue is whether there is a rational basis for imposing an examination requirement upon non-incumbent candidates for circuit court clerk while exempting incumbents from such a requirement.

As earlier observed, the Constitution expressly recognizes the necessity to determine whether one seeking the office is qualified. The examination required by SCR 1.060(2) is focused on the duties of the office and provides objective criteria for determining whether one has passed or failed. We can find nothing about the examination which lacks a rational basis; indeed, it is tailored to satisfy the qualification requirement of Section 100. There is an entirely rational basis for requiring aspirants to the office to pass the examination required by the rule.

As to the exemption of incumbent circuit court clerks, the rule presumes that incumbents satisfied the prevailing qualification requirements at the time they assumed office and in this litigation there has been no contention that appellee did not fulfill the requirements when he took office in 1964. By virtue of having performed the duties of the office, the rule also presumes the incumbent to have sufficient knowledge of the subjects covered by the examination. As such, no examination is necessary to demonstrate the qualifications of the incumbent. While reasonable people may disagree as to the desirability of exempting incumbent clerks from the examination based on their performance in office, the rule-making authority clearly had a rational basis for its determination and the rule

survives the constitutional challenge asserted here.

Our view with respect to this issue is fully supported by the opinion of this Court in *Commonwealth v. Griffen*, 268 Ky. 830, 105 S.W.2d 1063 (1937), a case involving an equal protection challenge to the exemption of incumbent school board members from a newly enacted minimum educational requirement. Initially, the Court applied what in contemporary parlance is termed a "rational basis" standard of review. As with this case, the Court noted that the Act did not prohibit any qualified person from seeking the office nor disenfranchise any voter or affect the freedom of elections.

"The exemption went only to the qualifications of those who proposed themselves, or were proposed by others, as prospective applicants." *Id.* 105 S.W.2d at 1065.

The Court reviewed a number of rules which have since become deeply embedded in equal protection analysis. Foremost among these for our purpose is that

"Such classification will not be disturbed by the court unless manifestly so arbitrary or unjust as to impose a burden upon, or exclude one or more of a class without a reasonable basis in fact." *Id.* at 1065.

As to the exemption of incumbents from the new requirement, the Court recognized its inability to say with certainty what had motivated the General Assembly to grant the exemption. It recognized the validity of various possible motivations as follows:

"It might have been better suggested that at the time of the act of 1932 there were in office many members who had served very efficiently for a long time, though not then possessing the evidence of qualification, due to the fact that formerly records were not so easily procurable. Perhaps the Legislature desired the change in standard to be gradual, both as a matter of necessity and for the proper conduct of the boards by old members, until opportunity for others to qualify as per the law. No matter what was the moving cause, it cannot now be questioned by the court, unless there appears an unreasonable classification." *Id.* at 1065.

Thus, by virtue of *Commonwealth v. Griffen, supra,* for more than fifty years, Kentucky has upheld the constitutionality of laws which differently classify incumbents and non-incumbents where there appears to be a rational basis for so doing and nothing about this case requires a departure from the foregoing rule.

Having fully reviewed appellant's claims that SCR 1.060 is unconstitutional and determined that the rule withstands any such challenge, we affirm the judgment of the trial court and hold that appellant is ineligible to the office of Circuit Court Clerk of Knott County. Henceforth, an aspirant to the office of circuit court clerk may fully satisfy the requirements of Section 100 of the Constitution by obtaining a passing grade on the examination required by SCR 1.060(2) and thus be deemed to possess the required judicial certification.

The only matter which remains to be determined is appellee's motion for sanctions against appellant pursuant to CR 73.-02(4). For appellee to prevail this Court must find that the appeal is so totally lacking in merit that it appears to have been taken in bad faith. We find nothing about this appeal which approaches the standard. Appellant has presented a question of first impression and challenged the constitutionality of a recently promulgated Supreme Court Rule. While appellant has not prevailed on the merits, the issues he has presented were deserving of review by this Court. Appellee's motion for sanctions is denied.

All concur.