Darby **FRANKLIN**, Petitioner,

v.

Cicely Jaracz **LAMBERT**, in her official capacity as Director of the Administrative Office of the Courts, Respondent,

and

Donna Pelfrey, Intervening Respondent.

No. 2001–SC–0064–OA.

Supreme Court of Kentucky.

April 26, 2001.

James J. Barrett III, Joseph Lane, Pillersdorf, Derossett & Barrett, Prestonsburg, for Petitioner.

Carol C. Ullerich, General Counsel, Administrative Office of the Courts, Christopher M. Hill, Christopher M. Hill & Associates, PSC, Frankfort, for Respondent.

Brent L. Caldwell, McBrayer, McGinnis, Leslie & Kirkland, PLLC, Lexington, for Intervening Respondent.

LAMBERT, Chief Justice.

The issue presented is whether SCR 1.060(4), a provision which requires a special qualifying examination for applicants seeking appointment to the office of circuit court clerk upon the occurrence of a vacancy, limits the number of times that the examination may be administered to any one person. To resolve this issue of first impression, we must look to the specific language of SCR 1.060(4), as well as KRS 30A.150, the statute governing the appointment process. We will also address the policies underlying the examination of persons aspiring to the office of circuit court clerk.

The facts of this case are as follows. In December 2000, following the retirement announcement of the Morgan Circuit Court Clerk, Circuit Judge Samuel C. Long designated Petitioner, Darby Franklin, and Intervening Respondent, Donna Pelfrey, to be administered a special clerk's examination pursuant to SCR 1.060(4) for the purpose of determining their eligibility to fill the vacancy. To be qualified, an applicant for circuit court clerk must receive a grade of 70% or more on the examination.[1] After eligibility is determined, the appointment is made by the chief circuit judge pursuant to KRS 30A.150 until a replacement is elected as provided in section 152 of the Constitution of Kentucky.

Upon receiving the designations set forth above, the Administrative Office of the Courts ("AOC") prepared the examination and administered it to both applicants on January 5, 2001. The examination was first graded electronically. Franklin received a passing grade on the examination; Pelfrey did not. Pelfrey's examination was later re-graded by hand, as provided by internal AOC policy for applicants who have scored between 65% and 70%. Pelfrey's score was determined to be 69.25%.

Prior to taking the test, Pelfrey wrote AOC a letter identifying various differences between the printed study materials and prevailing office practices. As a result of this complaint, there was a second review of Pelfrey's examination, and it revealed an error in the answer key. Accordingly, Pelfrey's final score was determined to be 69.85%.

On January 22, 2001, Judge Long contacted AOC and requested that Pelfrey be given another opportunity to take the examination. In support of his request, Judge Long cited Pelfrey's many years of deputy clerk service, her extremely close to passing score, and the alleged flawed study materials. AOC agreed to allow Pelfrey to re-take the examination, and she took it again on January 26, 2001. This examination has been graded, yet the results have not been certified or released.

Upon learning that Pelfrey had been allowed to re-take the examination, Franklin sent AOC a letter of protest. He then filed a motion in this Court pursuant to

---

1. SCR 1.060(2).

CR 57 and CR 76.36 seeking to prohibit Cicely Jaracz Lambert, in her official capacity as Director of AOC, from administering the special examination more than once to any candidate, from grading any additional examination that had already been administered, and from certifying the results of any additional examination. Franklin also filed a motion for intermediate relief, seeking to prohibit AOC from releasing or certifying the results of the January 26 special examination pending this Court's ruling on the underlying motion. This Court granted Franklin's motion for intermediate relief, and also stayed the appointment process provided for in KRS 30A.150 until further order of the Court.

SCR 1.060(4) provides as follows:

In the event of a vacancy in the office of the circuit court clerk, a special examination shall be prepared by the Administrative Office of the Courts to be administered to such person or persons designated by the chief circuit judge responsible for filling the vacancy by appointment, and to be administered to prospective candidates for election to fill the unexpired term.

Franklin contends that SCR 1.060(4) prohibits the administration of more than one special examination when there is a vacancy to be filled by appointment. He construes the language "a special examination shall be" to be a limit of one special examination because the phrase is in the singular. We do not interpret the rule so narrowly. The language used neither prohibits nor explicitly authorizes the administration of multiple examinations.

The language is quite general in nature, as it merely mandates that a special examination be administered and that AOC be the agency responsible for preparation of the examination. In fact, the rule simply does not address a situation, as here, in which there were two applicants for the appointment where one passed and the other failed, but the appointing authority requested a second examination for the failing applicant. There could be no doubt that if both applicants had failed, a subsequent examination would have been necessary.[2] The language of the rule does not address contingencies and its failure of specificity in this regard should lead to a broad construction, provided, however, that the distinction between applicants for appointment and persons taking the examination to gain ballot access be clearly understood. *See, infra.*

The only case construing the provisions of SCR 1.060 is *Combs v. Huff*.[3] In *Combs*, two persons wanted to run for the office of Knott Circuit Court Clerk on the Democratic ticket in 1993. Huff was exempt from taking the examination by virtue of his incumbency. Combs took the test but did not receive a passing grade. Combs sought to be a candidate, nevertheless, arguing that he was entitled to a post-election opportunity to take the examination to gain certification. This Court affirmed the rule and held that eligibility for the office must be determined prior to gaining access to an election ballot.[4] Combs was thus prevented from running for office.

Franklin reads *Combs* to impose a limit of one examination, but we distinguish *Combs* from the instant case because it

**2.** Just such a situation occurred in December, 1994, when a person designated to take a vacancy test for Cumberland County Circuit Court clerk failed. She was re-tested, along with another person, and both received passing grades.

**3.** Ky., 858 S.W.2d 160 (1993).

**4.** *See* SCR 1.060(3).

dealt with the clerk's examination administered to persons seeking the office through the electoral process, not to persons seeking appointment to a vacancy. The critical distinction is twofold: in the event of a vacancy, KRS 30A.150 requires that the chief circuit judge appoint a qualified successor, and the appointment must occur within a limited amount of time. Specifically, KRS 30A.150 provides,

> Whenever a vacancy occurs in the office of the clerk, the chief judge of the judicial circuit shall within thirty (30) days appoint a qualified successor to the office who shall serve until replaced as provided by Section 152 of the Constitution.

Necessarily, therefore, the views of the chief circuit judge, by virtue of being the appointing authority, are entitled to considerable weight. The responsibility to appoint a "qualified" person within a short time confers on the judge the power to require a subsequent examination even if one or more persons so examined have passed the first examination. Our view as to the distinction between election and appointment and its effect on the examination process is strengthened by reference to SCR 1.060(3) and (4). SCR 1.060(3) is detailed as to the requirements of the examination, and SCR 1.060(1) mandates successful completion before a candidate is qualified. As determined in *Combs v. Huff*, success on the examination is a prerequisite for seeking the office. In contrast, SCR 1.060(4) is without any such specificity, as all the circumstances that might arise in the process of filling a vacancy could not be reasonably anticipated.

This Court is not unmindful of language appearing in *Combs v. Huff* in which we describe multiple examinations as an "ab-surdity," and we do not retreat from this view. However, we are persuaded from the text and architecture of the relevant constitutional, statutory, and rules provisions that in this circumstance, the possibility of multiple examinations must be tolerated. In that context, we note that any person appointed to fill a vacancy will occupy the office only until the next opportunity of the voters to choose the official.

Upon the foregoing reasons, the request for a writ of prohibition is hereby denied, and the results of Pelfrey's examination shall be released and certified. The stay of proceedings entered herein on January 26, 2001, is hereby vacated.

IT IS SO ORDERED.

COOPER, and JOHNSTONE, JJ., concur.

KELLER, J., files a separate concurring opinion.

WINTERSHEIMER, J., dissents by separate opinion in which GRAVES, J., joins.

STUMBO, J., not sitting.

KELLER, Justice, concurring.

While I concur wholeheartedly in the final result reached by the majority, I traveled a different route to arrive at that result. Accordingly, I write separately to explain my concurrence.

In my opinion, this case represents another reminder of the quagmire this Court enters each time it attempts to unilaterally "improve upon" the Kentucky Constitution.[1] I break paths with the majority from the very outset because I believe that Kentucky Constitution § 100—and not our dubiously constitutional Supreme Court

---

1. *See e.g., Kentucky Utils. Co. v. South East Coal Co.,* 836 S.W.2d 407 (1992) (announcing "special justice" policy); *Kuprion v. Fitzger-* *ald,* Ky., 888 S.W.2d 679 (1994) (announcing family court pilot project).

Rule 1.060—governs the disposition of this matter. Section 100 provides in pertinent part:

No person shall be eligible to the office of Clerk unless he shall have procured from a Judge of the Court of Appeals, or a Judge of a Circuit Court, a certificate that he has been examined by the Clerk of his Court under his supervision, and that he is qualified for the office for which he is a candidate.[2]

Section 100 thus outlines the procedure by which a candidate for clerk becomes eligible for the office and it is not the least bit ambiguous. In fact, it is exceedingly explicit—a person procures certification from either a circuit court or a Court of Appeals[3] judge that, under the judge's supervision, he or she was examined by the clerk of the judge's court and found qualified for the office.

For 135 years[4] judges of the circuit courts and the Court of Appeals determined the eligibility of prospective clerks pursuant to the constitutional procedure without any controversy or challenge as to its fairness.[5] Yet, this Court adopted SCR 1.060[6] and thereby arrogated the absolute authority to determine eligibility of circuit clerks.[7] In so doing, this Court usurped

2. Ky. Const. § 100.

3. The Judges of the Court of Appeals in office on the effective date of the Judicial Article became Justices of the Supreme Court. Kentucky Acts 1974, .ch. 84, § 2(1). A question, therefore, exists as to whether Section 100's reference to a "Judge of the Court of Appeals" contemplates a Court of Appeals Judge or a Supreme Court Justice. That question is not relevant to the disposition of the matter now before the Court.

4. A provision identical to Section 100 was contained in Kentucky's immediate prior Constitution. Ky. Const. of 1850 art. VI, § 2 (repealed 1891).

5. Such criticism has, however, been levied against the SCR 1.060 procedure. As noted in the majority opinion, the AOC study materials conflicted with local office practices: "Pelfrey wrote AOC a letter identifying various differences between the printed study materials and prevailing office practices." Majority Opinion at 41 S.W.3d 853 (2001). This cannot be blamed upon AOC since, even with an unified court system, differences remain because of local office practices. AOC deserves praise for its efforts in this matter as well as for completing the reexamination within the thirty (30) day-period allotted by KRS 30A.150.

6. SCR 1.060 CIRCUIT COURT CLERKS
(1) Pursuant to Section 100 of the Constitution of Kentucky no person shall be eligible to seek the office of circuit clerk unless he shall have procured from a judge of the Court of Appeals, or a judge of the circuit court, a certificate that he has been examined by the clerk of his court under his supervision, and that he is qualified for the office for which he is a candidate.
(2) No such certificate shall be issued to any person unless that person has received a passing grade of 70% or more on a standard examination to be prepared and administered by the Administrative Office of the Courts. The examination shall include questions pertaining to the materials included in the Circuit Clerk's Manual, Circuit Clerk's Accounting Manual, and the Personnel Policies of the Court of Justice.
(3) The examination shall be given once each year in which circuit clerks are elected on the third Saturday in January. No person shall be eligible to appear on any election ballot for the office for circuit clerk who has not successfully completed the examination in the year of such election, and been so certified except no incumbent circuit clerk shall be required to be re-certified.
(4) In the event of a vacancy in the office of circuit clerk, a special examination shall be prepared by the Administrative Office of the Courts to be administered to such person or persons designated by the chief circuit judge responsible for filling the vacancy by appointment, and to be administered to prospective candidates for election to fill the unexpired term.

7. *Combs v. Huff*, Ky., 858 S.W.2d 160 (1993) ("[T]he duty to determine clerk eligibility formerly imposed on any Circuit Judge or any

the powers of both the General Assembly and the voters of this Commonwealth [8] by judicially amending Kentucky Constitution § 100 and substituting the Administrative Office of the Courts for the judge's clerk:

No such certificate shall be issued to any person unless that person has received a passing grade of 70% or more on a standard examination to be prepared and administered by the Administrative Office of the Courts. The examination shall include questions pertaining to the materials included in the Circuit Clerk's Manual, Circuit Clerk's Accounting Manual, and the Personnel Policies of the Court of Justice.[9]

In *Combs v. Huff*,[10] although the parties did not dispute the Court's power to determine clerk eligibility,[11] this Court attempted to justify its unilateral decision to alter the constitutional eligibility procedure:

Initially, we observe that the duty to determine eligibility was imposed on a judge of the circuit court or Court of

Appeals. With the adoption of the Judicial Article, Constitution Sections 109–124, effective January 1, 1976, the Court of Justice became a unified judicial system. See Constitution of Kentucky, Section 109. By virtue of Section 110(5)(b), which designates the Chief Justice as executive head of the Court of Justice, and the rule-making power conferred on the Supreme Court by Section 116 of the Constitution, it is indisputable that the duty to determine clerk eligibility formerly imposed on any Circuit Judge or any Judge of the Court of Appeals now rests exclusively with the Supreme Court. As such, there could be no serious contention that this Court lacks plenary power to determine clerk eligibility limited only by express provisions of the Constitution. [See *Ex Parte Farley*, Ky., 570 S.W.2d 617 (1978) ].[12]

I dispute that such a duty properly rests with this Court by virtue of the Judicial Amendment, and I contend that this Court

Judge of the Court of Appeals now rests exclusively with the Supreme Court." *Id.* at 161.).

8. Ky. Const. § 256 ("Amendments to this Constitution may be proposed in either House of the General Assembly at a regular session, and if such amendment or amendments shall be agreed to by three-fifths of all the members elected to each House, such proposed amendment or amendments, with the yeas and nays of the members of each House taken thereon, shall be entered in full in their respective journals. Then such proposed amendment or amendments shall be submitted to the voters of the State for their ratification or rejection at the next general election for members of the House of Representatives[].... If it shall appear that a majority of the votes cast for and against an amendment at said election was for the amendment, then the same shall become a part of the Constitution of this Commonwealth[]...." *Id.*); Ky. Const. § 27 ("The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one;

those which are executive, to another; and those which are judicial, to another." *Id.*); Ky. Const. § 28 ("No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." *Id.*).

9. SCR 1.060(2).

10. Ky., 858 S.W.2d 160 (1993).

11. *Id.* ("Appellant first contends that SCR 1.060 violates Section 100 of the Constitution of Kentucky by requiring that eligibility be determined prior to gaining access to the election ballot. *He acknowledges the power of this Court to establish a standardized examination for determination of qualifications*, but insists that the Constitution requires an opportunity to obtain certification after the election but prior to assuming office." *Id.* at 161 (emphasis added)).

12. *Id.*

lacks the power to determine circuit clerk eligibility.

I believe it important to note that Section 100 does not conflict with any provision of the Judicial Amendment,[13] and therefore, it was not repealed or modified by the enactment of that amendment.[14] In fact, the Judicial Amendment itself provides "[t]he clerks of the Circuit Court shall be elected in the manner provided elsewhere in this Constitution."[15] The only other Constitutional provisions concerning the election of circuit clerks provide:

- "[E]very six years there shall be an election in each county for a Circuit Court Clerk[ ]...."[16]

- "No person shall be eligible to the office[ ] mentioned in Section[ ] 97 ... who is not at the time of his election twenty-four years of age (except Clerks of ... Circuit Courts, who shall be twenty-one years of age), a citizen of Kentucky, and who has not resided in the State two years, and one year next preceding his election in the county and district in which he is a candidate."[17]

- "No person shall be eligible to the office of Clerk unless he shall have procured from a Judge of the Court of Appeals, or a Judge of a Circuit Court, a certificate that he has been examined by the Clerk of his Court under his supervision, and that he is qualified for the office for which he is a candidate."[18]

Nowhere in the Constitution, including the Judicial Amendment, is the Supreme Court empowered to prescribe additional qualifications for circuit clerks. Accordingly, this Court had no authority, either expressed or implied, to adopt SCR 1.060 and thereby impose the additional qualification upon a person seeking election to the office of circuit clerk that he or she "receive[ ] a passing grade of 70% or more on a standard examination to be prepared and administered by the Administrative Office of the Courts."[19] Being without such authority, this Court's arrogation of the power to determine clerk eligibility was in clear violation of the Constitution,[20]

13. Ky. Const. §§ 109–124. These sections are often referred to as either the "Judicial Amendment" or "Judicial Article" to Kentucky's Constitution.

14. By implication, sections consistent with the provisions of the Judicial Amendment were not repealed and remained in full force and effect. Ky. Const. § 124 ("Any remaining sections of the Constitution of Kentucky as it existed prior to the effective date of this amendment which are in conflict with the provisions of amended Sections 110 through 125 are repealed to the extent of the conflict[.]" Id.).

15. Ky. Const. § 114(3).

16. Ky. Const. § 97.

17. Ky. Const. § 100.

18. Id.

19. SCR 1.060(2).

20. Broughton v. Pursifull, Ky., 53 S.W.2d 200, 245 Ky. 137 (1932) ("It is the rule that, when the Constitution of a state creates an office, and names the requirements of eligibility therefor, the Legislature has no authority to make additional requirements[ ]...." Id. at page 53 S.W.2d 202 (quoting with approval from Jansky v. Baldwin, 120 Kan. 332, 243 P. 302, 303 (1926))); Id. ("Where the constitution has clearly defined the qualifications of an officer, it is not within the power of the legislature to change them or add new or additional qualifications, unless the constitution confers that power." Id. at page 53 S.W.2d 203 (quoting with approval from 46 Corpus Juris, Officers)). A fortiori, this Court too should not change the constitutional qualifications of an officer. If this Court, above all others, ignores the Constitution, how can anyone have respect for the Constitution?

even if done for the laudable purpose of "assur[ing] that each clerk is competent to discharge the duties of the office." [21]

Further, the justifications given by the Court in *Combs v. Huff* for the AOC testing requirement (i.e., "becom[ing] a unified judicial system," "designat[ing] the Chief Justice as executive head of the Court of Justice" and conferring "rule-making power on the Supreme Court,") are simply not relevant to the inquiry of whether this Court properly or improperly assumed the power to determine clerk eligibility. For example, Kentucky Constitution § 116 provides, in its entirety:

> The Supreme Court shall have the power to prescribe rules governing its appellate jurisdiction, rules for the appointment of commissioners and other court personnel, and rules of practice and procedure for the Court of Justice. The Supreme Court shall, by rule, govern admission to the bar and the discipline of members of the bar.[22]

The Court did not attempt to elaborate how its power to determine clerk eligibility derived from Section 116 and for good reason; it did not. Circuit clerks, like judges and justices, are elected Constitutional Officers; they are not appointive court personnel. Unquestionably, this Court's rule-making authority empowers us to govern the Court of Justice. No credible argument can be made, however, that our rule-making authority allows us to amend constitutional provisions establishing the qualifications for Constitutional Offices.

Finally, I would note that the rule-making power of the Commonwealth's highest court did not suddenly appear with the Judicial Amendment:

When we say that an express constitutional grant of rule-making power is unnecessary we do not mean that the rule-making power does not flow from that instrument. The fountain source of that power is in the act of division of powers among the three branches of the government (158 A.L.R. 707) and the grant of judicial power to the courts by the constitution carries with it, as a necessary incident, the right to make that power effective in the administration of justice.[23]

While the predecessor to this Court recognized its rule-making power, it did not, under the guise of that power, arrogate to itself the authority to determine the eligibility of circuit clerks. Our predecessor Court recognized that the Constitution delegated such authority to circuit and court of appeals judges, and we should do no less.

I believe that authority to determine Donna Pelfrey's qualifications lies with the Morgan Circuit Judge from whom Pelfrey sought certification. I concur in the result reached by the majority opinion because I believe Kentucky Constitution § 100 gives a circuit judge the power to order this reexamination. While I dispute the constitutionality of SCR 1.060's requirement that an applicant receive a given passing grade on the AOC examination before the circuit judge may certify his or her eligibility, I believe a circuit judge as the appointing authority may, in his or her discretion, and pursuant to the supervisory powers granted by Kentucky Constitution § 100, choose to require an applicant to take the AOC examination before certifying eligibility. I would declare SCR 1.060 unconstitutional in as much as it adds a mandatory require-

**21.** *Combs v. Huff,* Ky., 858 S.W.2d 160, 163 (1993).

**22.** Ky. Const. § 116.

**23.** *Craft v. Commonwealth.,* Ky., 343 S.W.2d 150, 151 (1961).

ment to the constitutional eligibility procedures outlined in Kentucky Constitution § 100.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because it eviscerates the effectiveness of both the statute and the Supreme Court rule. It is disappointing to realize that the lofty language and noble philosophy of *Combs v. Huff*, Ky., 858 S.W.2d 160 (1993), has been abandoned.

I cannot agree with the interpretation fashioned by the majority that the language "a special examination shall be" does not limit the number of special examinations to a single successful test. The language is not ambiguous or unclear. Only in the case where all the applicants failed, would a subsequent examination be necessary.

KRS 30A.150 provides that the chief judge of a judicial circuit shall, within 30 days, appoint a qualified successor when a vacancy occurs in the office of circuit clerk. SCR 1.060(4) provides a method of satisfying the statute and governs the manner of replacement undertaken by the circuit judge.

Clearly, the authorization of multiple examinations is an absurdity as stated in the *Huff, supra,* opinion. Any deviation from that standard is a retreat from the high principles expressed in that case and embodied in the Supreme Court rule. Once a person has passed the examination, and is the only successful applicant, the examination process is complete. To hold otherwise is to defeat the purpose of the examination in the first place.

The public and the aspirants for the circuit clerk position will surely lose confidence in the fairness and purpose of the examination if we permit continuing testing even after at least one applicant has successfully completed the test. This should not be a system where an applicant can continue to test until they pass. There can be no rational justification for allowing candidates for a vacancy to be tested more than once. The rule refers to a special examination in the singular.

GRAVES, J., joins this dissent.