**Hon. William Mitchell NANCE, Circuit Court Judge, 43rd Judicial Circuit, Division Two (Family Court), Commonwealth of Kentucky, Petitioner,**

v.

**KENTUCKY ADMINISTRATIVE OFFICE OF the COURTS, Respondent.**

No. 2010–SC–000202–OA.

Supreme Court of Kentucky.

March 24, 2011.

Robert Lee Abell, Lexington, KY, Counsel for Petitioner.

James E. Keller, Elizabeth Snow Hughes, Huston Barrow Combs, Gess, Mattingly & Atchison, PSC, Lexington, KY, Cindra Kay Walker, Administrative Office of the Courts, Laurie Rachael Kidd, Director, Administrative Office of the Courts, Frankfort, KY, Counsel for Respondent.

Opinion of the Court by Justice NOBLE.

This action arises from a petition filed by Judge William Nance, pursuant to CR 76.36, for a writ enjoining the Administrative Office of the Courts (AOC) to "cease and desist" from unlawful interference with his powers as "appointing authority" for the employees in his office as a circuit family court judge. In March of 2009, the employment of Sharon Travis, the Family Court Administrator for the 43rd Judicial Circuit, where Judge Nance presides, was terminated after an internal investigation reported that the Administrator created "an atmosphere of fear" and violated confidentiality rules. Judge Nance further asks, as ancillary to his appointing authority, that the Administrator be reinstated.

After careful deliberation, this Court finds that there is no basis for the writ, but acknowledges that this is the proper forum to decide the question. Though Judge Nance seeks reinstatement of the Administrator, among other things, this is not an appeal of a personnel decision. At the heart of this matter is the question of whether the Chief Justice can terminate the employment of an employee working in a circuit judge's office, and if he has the authority, can it be delegated? Such disputes are properly brought in this Court. *See Jones v. Commonwealth, Administrative Office of the Courts,* 171 S.W.3d 53, 55 (Ky.2005).

Judge Nance begins by asserting that as the elected official in whose office the Administrator works, he is the sole appointing authority. As the appointing authority, he asserts that he not only hires the employee, he also is the official with the authority to fire that employee. There is support for his position in the AOC Personnel Policies, which must be approved by the Supreme Court pursuant to SCR 1.050(2). In the Policies, at Section

1.03(1), there appears to be a clear delineation between the Director of AOC as an appointing authority "for personnel at the Administrative Office of the Courts" and the elected official "for the personnel in his or her office." However, the policy does not address the termination authority of the *Chief Justice.*

The Kentucky Constitution, at Section 110(5)(b), states that the Chief Justice is the "executive head" of the Court of Justice and has the specific ability to "appoint such administrative assistants as he deems necessary." Further the Chief Justice must submit the budget for the Court of Justice, which contains the financial request for the salaries of any positions within the Court of Justice. He is given the authority to manage the day-to-day aspects of the Court and its administration. This authority is balanced by the "power to prescribe rules . . . for the appointment of commissioners and other court personnel" in the Court of Justice, which is given to the Supreme Court as a whole in Section 116 of the Kentucky Constitution.

Historically, at least since the beginning of the Court of Justice's present incarnation, following the Judicial Article of 1975 creating the unified four-tier court system and a statewide administrative office to assist the courts, the Supreme Court has enacted Supreme Court Rules which give deference to the Chief Justice to act in his discretion on most day-to-day matters of court administration. Further, the Supreme Court has approved personnel policies for Court of Justice employees, which specify that non-tenured employees "serve at the pleasure" of the appointing authority.

The AOC Personnel Policy specifically at issue here, Section 1.03(1), says that the elected official is the appointing authority for employees in his or her office. This personnel policy has been duly approved by the Supreme Court, and sets forth policy in making local employment decisions: the elected official should decide who works directly with him or her on a daily basis. This includes choosing the person to be hired, and firing whoever does not work out successfully. This is a sound policy for many reasons: the Chief Justice cannot reasonably travel the state to all 120 counties with elected judicial officials to handle local employment decisions; the cost would be exorbitant; and in the long run, the elected officials and employees would possibly be incompatible.

Nonetheless, Section 110 of the Kentucky Constitution makes the Chief Justice the Chief Executive Officer of the Court of Justice. As such, he has participated in creating various employment positions, has approved the job descriptions, and has asked the legislature for the money to fund them, including the Administrator's position in the 43rd Judicial Circuit. Additionally, as Chief Executive Officer, he must oversee the employment of Court of Justice personnel, even those in local offices, and act when a local official refuses to act, if it is in the best interests of the Court of Justice.

In this case, the Court Administrator at issue had been the subject of a complaint made to the AOC Personnel Department during an exit interview of another employee. This complaint led to an investigation by an outside, neutral attorney. In her report, the investigator found that the Court Administrator had violated confidentiality principles relating to confidential matters and had created a hostile work environment, or "an atmosphere of fear." Recommendations regarding her future employment were made, which were presented to the local official who refused to follow the recommendations and terminate her employment. No formal complaint

was initiated under the Court of Justice harassment policy.

At that point, the Director of AOC entered the dispute. KRS 27A.020(1) provides that the Chief Justice may delegate administrative services for the Court of Justice and the supervision of clerical and administrative personnel to the AOC Director. While this statute may raise questions regarding separation of powers, this Court has long given it comity in most instances. Certainly, in this instance, it allows no more than the authority the Chief Justice, as the executive head of the Court of Justice, already has. In any administrative capacity, some functions may or must be delegated, particularly when the executive heads a separate branch of government with employees numbering in the thousands. In fact, for example, the Supreme Court has approved the policy that the Director has "responsibility for the implementation of the Court of Justice Equal Employment Opportunity Policy." AOC Personnel Policies, Section 3.01(2).

However, in an independent capacity, it is not the Director of AOC who has termination authority for Court of Justice Employees. There is no grant of authority to the AOC Director beyond that which is delegated to him by the Chief Justice, or by the Supreme Court in its rule-making capacity.

Acting on the impartial report, former AOC Director Jason Nemes first asked Judge Nance to discharge the Administrator. Judge Nance had refused to participate in the investigation, and refused to discharge her when asked to do so.

At this point, three written communications become important to the analysis of this case. In a letter dated March 26, 2009, then-Director Jason Nemes wrote the Administrator to terminate her employment. The letter specifically states that "pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 27A.020(1), I am hereby terminating you as Family Court Administrator for the Barren Family Court." Later in the letter he said, "I have concluded that your actions may place Judge Nance and the Court of Justice at risk for personal and professional liability." Facially, it can be argued that the use of the personal pronoun "I" makes this termination an act taken by the Director standing alone.

However, this letter also refers to the Chief Justice by reference to Section 110, and to a delegation to the Director pursuant to KRS 27A.020. This is a recognition that the Chief Justice, as the executive head of the Court of Justice, is a superior officer to the Director. And while the statute sets forth things that the Chief Justice may delegate to the Director of AOC, even though termination authority is not listed, it is clearly within the executive powers of the Chief Justice to make such a delegation within the Court of Justice. The statute does not *empower* the Chief Justice, as his authority comes from the Constitution. Likewise it cannot *limit* that authority for the same reason. Instead, the statute primarily shows that the legislature understands and approves the fact that a busy Chief Justice heading the third branch of government may need to delegate some functions over which he retains executive control.

To that end, the two subsequent written communications in the record establish that the Chief Justice was aware of the situation and approved the actions taken by the Director. In a letter to Judge Nance dated April 10, 2009, Chief Justice John Minton stated that he had delegated supervisory control to the Director, and that the Director had the authority to terminate the Administrator. In the second letter dated June 30, 2009, written after a meeting with Judge Nance in Frankfort,

followed by a letter from the judge, Chief Justice Minton stated that after "further review of the facts of this case, the Kentucky Court of Justice Personnel Policies, and Kentucky statutes, I remain resolute in the conclusion that Ms. Travis's termination was an appropriate and necessary measure." In both letters, the Chief Justice referred to the investigative findings listing the conduct of the Administrator that led to her termination. These letters not only establish that the Chief Justice was aware of the problem, but that he also delegated the termination process to the Director. In the third letter, he unequivocally demonstrated his agreement with the action taken. The Chief Justice, at the very least, ratified the actions of the Director.

When Judge Nance declined to act in the best interests of the Court of Justice, the Chief Justice, as Chief Executive Officer of the Court of Justice, had to determine if action was necessary. At that point, there was no benefit from the Court of Justice policy allowing local officials to have appointment authority over employees working as the judge's staff, but rather potential liability. As the executive head of the Court of Justice constrained to act in its best interest, Chief Justice Minton properly made the executive decision to terminate the Court Administrator in line with the authority given to him by Section 110 of the Kentucky Constitution.

Consequently, we hold that the power of local officials to appoint the personnel in their offices exists through policy of the Supreme Court. This policy in no way prevents the Chief Justice from acting as the executive head of the Court of Justice when those to whom any power is delegated are not acting in the best interests of the Court of Justice. Granting appointing authority to local officials for their office personnel is a policy that works generally in the best interest of the Court of Justice. When that grant of appointing authority is not properly executed by the local officials so that the grant is no longer in the best interest of the Court of Justice, then the Chief Justice must act, either directly or by proper delegation of his authority. That is exactly what Chief Justice Minton did here. Consequently, there is no basis to grant a writ.

Since this Court is not granting the writ, there is no need to address the reinstatement of the Administrator, or whether any other Court of Justice policies were violated in her employment action, except to say that these questions cannot be raised on her behalf by Judge Nance.

For these reasons, Judge Nance is not entitled to the grant of a writ, and his petition is denied.

ABRAMSON, CUNNINGHAM, SCOTT and VENTERS, JJ., concur.

ABRAMSON, J., also concurs by separate opinion.

SCHRODER, J., dissents by separate opinion.

MINTON, C.J., not sitting.

ABRAMSON, J., concurring:

I concur because the well-reasoned majority opinion is grounded in the Kentucky Constitution, specifically § 110(5)(b), which states in pertinent part: "The Chief Justice shall submit the budget for the Court of Justice (COJ) and perform all other necessary administrative functions." This particular provision controls disposition of the issue at hand, namely "when a COJ appointing authority refuses to terminate an employee whose conduct merits dismissal, who has the authority to act?" The dissent counters that the full Supreme Court must take part in the employee's dismissal, citing § 116 of the Kentucky

Constitution, a provision that, in pertinent part, gives this Court authority to make "rules for the appointment of commissioners and other court personnel...." Certainly, the Court has rule-making authority in this area and, indeed, it has exercised that authority by adopting personnel policies. But the Court has never adopted a policy that addresses the particular scenario of a local appointing authority unwilling to act when confronted with grounds for dismissal of a COJ employee. The dissent refuses to acknowledge this crucial fact and then suggests that the Chief Justice, in taking a personnel action deemed to be in the best interests of the Court of Justice and public, must be amending or overriding the Court's personnel policies. Dissent at p. 78. He plainly did neither of those things. There is an interstice created by the absence of a controlling personnel policy and that interstice is properly filled by the Chief Justice exercising his power under § 110 to make a "necessary administrative" decision. Moreover, to suggest that the full Court must convene to decide the termination issue completely misperceives the fundamental difference between rule-making power and administration. The Court could have adopted a personnel policy that addressed this scenario (and perhaps it will do so in the future) but having either declined to do so or failed to do so, the Chief Justice is not powerless to engage in necessary administrative acts, and he most certainly is not obligated to convene the full Court to address a personnel scenario which they failed to address or chose not to address in the first instance.

Oversight of the Court of Justice is a solemn and, indeed, awesome responsibility and a myriad of circumstances have arisen, and will arise, which have not been anticipated, requiring prompt action in the interest of the Court of Justice and the public we serve. We have elected a Chief Justice and have reposed confidence in him to act in those matters. The dissent proposes a management-by-committee approach to Court administration in these circumstances which is not supported by the law and which has been rejected by the overwhelming majority of the Court— indeed, six of the seven sitting Justices since we may rightfully presume that our current Chief Justice acted with the same well-grounded understanding of the law as does the majority in this case. To state that in reaching our decision, the majority has "diminish[ed] respect for this Court and the rule of law," *id.* at p. 80, and to suggest that only the lone dissenter has honored the Constitutional oath and declined to abdicate responsibilities, *id.* at p. 80, is entirely inappropriate.

SCHRODER, J., dissenting:

Rather than admit that the AOC Director improperly fired an appointee of an elected official (a sitting Family Court Judge), the majority redefines the issue, overlooks controlling precedent, and ignores our Supreme Court policies. Judge Nance is entitled to the writ because the legal remedy for terminating the employee has not been followed.

Simply stated, the facts *reflected by the record* are: [1] By letter dated March 26, 2009, the former AOC Director informed the court administrator of elected Family Court Judge William Nance, that *he* (the AOC Director) had concluded she should be terminated, and that *he* was terminat-

---

1. The record before this Court is extremely limited, and consists only of Judge Nance's petition, AOC's response, and three letters attached as exhibits. Because the investiga- tor's report is not contained in the record, we do not know what the allegations against the court administrator were.

ing her effective March 27, 2009.[2] Recognizing that the AOC Director had no authority to fire his employee, Judge Nance complained to the Chief Justice.[3] Believing the AOC Director possessed such authority and that cause existed, the Chief Justice acquiesced in the AOC Director's decision.[4] Again, Judge Nance complained to the Chief Justice that the AOC Director did not have the authority to fire his employee. The Chief Justice responded that, on further review, he remained resolute with the AOC's termination.[5] Judge Nance thereafter petitioned this Court for a writ to enjoin the AOC Director from firing his court administrator.

## THE AOC DIRECTOR CANNOT TERMINATE THE APPOINTEE OF AN ELECTED COURT OF JUSTICE OFFICIAL

The AOC Director has no authority to hire or fire a non-AOC employee. AOC is a department within the Court of Justice. While all AOC employees are Court of Justice employees, not all Court of Justice employees are AOC employees (see organizational chart in appendix).[6] Elected officials in the Court of Justice, and their staffs, are *not* AOC employees.[7] These elected officials include justices, judges, and circuit/district court clerks.

Personnel policies and procedures for the Court of Justice, which includes elected officials and their staffs, and the AOC, are set by the Supreme Court. Ky. Const. § 116; SCR 1.050. This Court has established a policy that the elected official shall be the appointing authority[8] for personnel in his or her office. *Personnel Policies for the Kentucky Court of Justice*, § 1.03(1).[9] The AOC Director's appointing authority is limited to "personnel at the Administrative Office of the Courts." *Id.* Therefore, as the majority agrees, the AOC Director has no independent authority to terminate the employee of an elected judge. Accordingly, under the facts in the record, Judge Nance is entitled to his writ.

But wait! Not wanting to grant the writ, the majority changes the facts and redefines the issue. After realizing the Director said "I" in the letter of termination, the majority spends the next two pages rationalizing that it was "really" done by the Chief Justice through his delegation of powers through KRS 27A.020 (but recognizing that said statute does not

2. *See* Exhibit B of the Petition (Exhibit A of Response), Letter from former AOC Director to Sharon Travis.

3. *See* Exhibit B of the Response, Letter from Chief Justice Minton to Judge Nance dated April 10, 2009.

4. *See* Exhibit B of the Response, Letter from Chief Justice Minton to Judge Nance dated April 10, 2009.

5. *See* Exhibit C of the Response, Letter from Chief Justice Minton to Judge Nance dated June 30, 2009.

6. The AOC was created to serve as the staff for the Chief Justice in executing the policies and programs *of the Court of Justice.* KRS 27A.050; Ky. Const. § 110(5)(b). Consistent,

however, with the Supreme Court's control and rule-making authority over the Court of Justice, AOC policies and procedures must be approved by the Supreme Court, and all of its personnel actions must conform to the requirements of the judicial personnel system approved by the Supreme Court. **SCR 1.050**; Ky. Const. § 110(2)(a), § 116.

7. The AOC provides services to elected officials and their staffs, such as payroll, benefits, facilities, and technical support.

8. The "appointing authority" is the individual who is authorized to hire *and dismiss* said employees. *Personnel Policies for the Kentucky Court of Justice*, § 1.03(1).

9. Adopted by the Supreme Court (Order No. 2005–03).

list termination authority), and redefines the issue as a firing by the Chief Justice.

## THE CHIEF JUSTICE CANNOT DELEGATE POWERS WHICH HE DOES NOT HAVE

For argument's sake, even if the firing was through delegation to the AOC Director by the Chief Justice, or ratified by the Chief Justice, Judge Nance would still be entitled to the writ because the Chief Justice cannot delegate powers that he does not have. The Chief Justice does not have the power to unilaterally terminate the appointee of an elected official.

Section 110 of the Kentucky Constitution creates the Supreme Court. The Supreme Court consists of a Chief Justice and six associate justices. Ky. Const. § 110(1). *The Chief Justice is not the Supreme Court.* Where the Constitution, statute, rule, or policy refers to the "Supreme Court," this means *the seven justices of the Supreme Court.* Sections 110(2)(a) and 116 of the Kentucky Constitution vest control of, and rule-making power for, the Court of Justice in the *Supreme Court.*[10] *See, e.g., Abernathy v. Nicholson,* 899 S.W.2d 85, 87–88 (Ky.1995) (recognizing that Section 110(2)(a) grants the Supreme Court supervisory control over the Court of Justice, and that Section 116 vests rule-making power for the Court of Justice exclusively with the Supreme Court); *Combs v. Huff,* 858 S.W.2d 160, 162 (Ky.1993) ("With the adoption of the Judicial Article and creation of a unified court system, this Court was granted rule-making power over matters affecting the Court of Justice."); *Kentucky Utilities Co. v. South East Coal Co.,* 836 S.W.2d 407, 408 (Ky.1992) ("The authority to exercise administrative control of the judicial branch of government is vested in the Supreme Court of Kentucky."); *Smothers v. Lewis,* 672 S.W.2d 62, 64 (Ky.1984) (recognizing the Supreme Court's rule making power is "firmly rooted within the Constitution"); *Francis v. Taylor,* 593 S.W.2d 514, 515 (Ky.1980) ("The Supreme Court, in addition [to appellate jurisdiction], has the control (or supervision) of the entire Court of Justice."); *Ex parte Farley,* 570 S.W.2d 617, 620 (Ky.1978) ("[Section] 110 vests the supervisory and policy-making authority of the judicial department in the Supreme Court."). Supreme Court Rule 1.020(1)(a) requires that "matters of policy or administration shall be decided by a concurrence of at least four of its members." Orders of the Court are *signed* by the Chief Justice. SCR 1.020(*l*)(b).

Section 110(5)(a) of the Kentucky Constitution provides for the election of a Chief Justice by the members of the Court. Section 110(5)(b) provides that the Chief Justice shall be the "executive head" of the Court of Justice, and perform necessary administrative functions relating to the Court. The majority misconstrues the role of an "executive head" to be superior to the role of the Supreme Court, and would give the Chief Justice veto power over all Court of Justice personnel deci-

---

**10.** Section 110(2)(a) of the Kentucky Constitution provides:

The Supreme Court shall have appellate jurisdiction only, except it shall have the power to issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause, or as may be required to exercise control of the Court of Justice.

Section 116 provides:

The Supreme Court shall have the power to prescribe rules governing its appellate jurisdiction, rules for the appointment of commissioners and other court personnel, and rules of practice and procedure for the Court of Justice. The Supreme Court shall, by rule, govern admission to the bar and the discipline of members of the bar.

sions. There is no basis in reason or in the law for this interpretation.

The Chief Justice, as the executive head of the Court of Justice, administers, or carries out, the policies of the Court of Justice, which are adopted by the Supreme Court. The Chief Justice has no *independent* policy or rule-making authority for the Court of Justice. Therefore, in performing his administrative functions, the Chief Justice is constrained by the policies and rules promulgated by the Supreme Court. "Though Const. § 110(5)(b) provides that the Chief Justice 'shall be the executive head of the Court of Justice,' there can be little doubt that § 110 vests the supervisory and policy-making authority of the judicial department in the Supreme Court." *Farley*, 570 S.W.2d at 620.

"Section 110(5)(b) of the Constitution does not confer unbridled, absolute or unlimited power on the Chief Justice in his capacity as Chief Executive of the court system." *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 683 (Ky.1994). "The power of the Chief Justice is not absolute. It must be exercised under the authority granted by the constitution and is subject to review by the entire Supreme Court." *Id.* at 684. Thus, in administrative matters, the Chief Justice is accountable to the entire Supreme Court for his actions. As this Court recognized in *Kuprion*, actions of the Chief Justice acting in an administrative capacity are reviewed under an abuse of discretion standard. *Id.* at 682–84.

Section 116 of the Kentucky Constitution specifically authorizes the *Supreme Court* (not the Chief Justice individually) to adopt policies and procedures for personnel matters for the Court of Justice.

Under this constitutional authority, the Supreme Court established the policy that the elected official is the appointing authority for personnel in his or her office. *Personnel Policies for the Kentucky Court of Justice,* § 1.03(1). The Chief Justice is bound by this policy.

## THE SUPREME COURT, NOT THE CHIEF JUSTICE, CAN TERMINATE THE NON–TENURED EMPLOYEE OF AN ELECTED COURT OF JUSTICE OFFICIAL

The Supreme Court has designated the elected official as the appointing authority for his or her office personnel. This means Judge Nance, the elected Family Court Judge, has the discretion and authority to both hire and dismiss his court administrator. The issue facing this Court is—how can a non-tenured employee who engages in conduct which interferes with the operation of the Court of Justice (as alleged in this case) be removed, when the appointing judge refuses to act? While, for the reasons stated above, the Chief Justice individually does not have the authority to amend or override Court of Justice personnel policies,[11] the *Supreme Court* does have said authority. Ky. Const. § 110(2)(a); Ky. Const. § 116. "In addition to the Court's Constitutional rule making power, the Court is also vested with certain 'inherent' powers to do that which is reasonably necessary for the administration of justice within the scope of their jurisdiction." *Smothers*, 672 S.W.2d at 64. Pursuant to Section 116 of the Kentucky Constitution and SCR 1.020(*l*)(a), termination of Judge Nance's court administrator would require a vote of four justices.[12]

---

**11.** Amendments to the Personnel Policies for the Kentucky Court of Justice made by the Chief Justice alone, like those before the 2009

layoffs (Order Nos. 2009–08, 2009–10, and 2009–11) are *ultra vires* and void.

**12.** While only the Supreme Court may amend or override a Court of Justice personnel poli-

## THE AOC DIRECTOR, CHIEF JUSTICE, AND THE COURT MAJORITY ARE NOT FOLLOWING SUPREME COURT PERSONNEL POLICIES

The letters from the Chief Justice to Judge Nance add another complication to the case. The letters indicate that the AOC Director terminated the employee for having violated Sections 2.02 (Confidential Information), 2.05 (Abuse of Position) and 3.02 (Workplace Harassment) of the Court of Justice personnel policies.[13] The added complication is that Section 3.02 requires specific procedures to be followed for both tenured and non-tenured, elected and appointed, employees accused of workplace harassment, including review and findings by the Court of Justice Harassment Complaint Panel (COJ HCP). *Personnel Policies for the Kentucky Court of Justice*, § 3.02(8)(a)–(e). The record before this Court does not indicate that these procedures were followed. The majority simply *ignores* the Court's own harassment policy.

The majority also blatantly ignores, as evidenced by the letters in the record, the AOC's and Chief Justice's obvious misunderstanding of what constitutes "workplace harassment" or "hostile work environment" as those terms are used in a legal sense (per Kentucky's Civil Rights Act, KRS Chapter 344, and Section 3.02 of the *Personnel Policies for the Kentucky Court of Justice*). Under Section 3.02, "unlawful workplace harassment" (hostile work environment) must be based on "race, color, religion, gender, national origin, age, disability, sexual orientation [or] political affiliation."[14] *Personnel Policies for the Kentucky Court of Justice*, § 3.02(2)(a)–(b). Judge Nance points out in his petition that there was no allegation that his employee engaged in any such conduct. While an "atmosphere of fear," if true, would be undesirable, I remind the majority that this does not constitute a "hostile work environment" in the legal sense, which is what Section 3.02 of our personnel policies encompasses. Accordingly, from the face of the limited record, termination under Section 3.02 appears improper.

Finally, whatever offense(s) the Court Administrator may or may not have committed, and any evidence thereof, are outside the record. Even if the majority believes the Chief Justice has the power to do so, how, ***without having seen the evidence,*** can the majority conclude the Chief Justice "properly" terminated the employee? The record before this Court contains

cy (in this case, Section 1.03(1)—the grant of appointing authority to the elected official), I note that an alternative remedy lies with the Judicial Conduct Commission. A judge who declines to terminate an employee whose conduct interferes with the operation of the Court of Justice can face the Judicial Conduct Commission. *See* SCR 4.300, Canon 3. The Code of Judicial Conduct recognizes that "[t]he judge's judicial duties include all the duties of the judge's office prescribed by law," SCR 4.300, Canon 3A, and holds the judge personally accountable for the actions or inactions of his or her staff. Violations of the Code of Judicial Conduct are punishable by the Judicial Conduct Commission, which has the authority to discipline judges, with punishments ranging from a private reprimand to a sus-

pension or removal from office. Decisions of the Judicial Conduct Commission are reviewable by the Supreme Court. By operation of law, a judge's removal terminates his appointing authority.

13. *See* Exhibit B of the Response, Letter from Chief Justice Minton to Judge Nance dated April 10, 2009, and Exhibit C of the Response, Letter from Chief Justice Minton to Judge Nance dated June 30, 2009.

14. Section 3.02 incorporates protected criteria set forth in KRS 344.040 (race, color, religion, gender, national origin, age, and disability) while adding sexual orientation and political affiliation.

no allegations of fact, no investigative report, nor any explanation of the conduct which constituted the alleged violations. How can this Court conduct a meaningful review without the evidence?

## CONCLUSION

When the Supreme Court ignores its own rules, it can only diminish respect for this Court and the rule of law in this Commonwealth. I have taken an oath to uphold the Kentucky Constitution and will not abdicate my responsibilities and cede the Court's power to the AOC Director or to the Chief Justice. As the facts and the law stand in this case, the writ should be granted and the matter remanded to the whole Court for further proceedings.

## APPENDIX

Kentucky Court of Justice Organizational Structure

**APPENDIX**

# Kentucky Court of Justice Organizational Structure

*Organizational Chart,* Kentucky Court of Justice, http://courts.ky.gov/research